**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:15-cv-111-RGD-DEM |
| | ) | |
| CYNTHIA K. SATTERWHITE and | ) | |
| GASTROENTEROLOGY SPECIALISTS, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

**RESPONSE OF PLAINTIFF UNITED STATES OF AMERICA
TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

COMES NOW the Plaintiff, the United States of America, (hereinafter, "the United States") and in response to the DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT AND SUPPORTING MEMORANDUM (hereinafter, collectively, the "Motion"), asks that said Motion be denied, or should it be granted, in whole or in part, that the United States be given leave to amend its Complaint. Arguments in support of the position of the United States are set forth hereinbelow.

**INTRODUCTION AND SUMMARY OF ARGUMENT IN RESPONSE**

In terms of an overview, the Defendants' Motion to Dismiss seems to be divided into two parts: (1) challenges to the sufficiency of pleading of the United States' First Amended Complaint (hereinafter, the "Complaint") and (2) statute of limitation arguments as to the various causes of action set forth in the Complaint. The Defendants' attack on the sufficiency of the Complaint focuses on a legal argument which sets forth the erroneous assertion that False Claims Act (hereinafter, the "FCA") liability can exist only if the United Sates has a contract with the

Defendants and that FCA liability can exist only if the Defendants submitted false claims "directly" to the United States and that the payment of those false claims by the United States went "directly" to the Defendants. The Defendants have no authority in the language of the FCA for these assertions and they grossly misinterpret the case law which they cite in support of their arguments.  The United States asserts the  FCA creates a cause of action available only to the United States (and relators acting in its behalf) and that a contract directly between the United States and the Defendants (or any alleged filer of a false claim) is not a prerequisite to the existence of a FCA cause of action.

Throughout the Defendant's Motion, there are factual assertions that are both disputed and unproven.  As such, they belong in an answer and should be subjected to the test of truth by judge or jury, in a summary judgment motion or at trial. However, to the extent that any such factual assertions may be relevant to the case, the United States as it responds to their arguments, will point out those disputed factual assertions.  Notwithstanding, the only issue now before the Court is the sufficiency of the Complaint and whether the United States' Complaint contains factual allegations sufficient to provide the Defendants with notice as to what the claim is and the grounds upon which the claim rests.

The Defendants' Motion intones an element of surprise as to the allegations in the Complaint and infers a lack of understanding of how claims are submitted to and paid by federal, taxpayer financed health care programs. The details of how the Defendants submitted their claims to the federal program herein, TRICARE, and how those claims were processed and paid by the TRICARE program can be added to the Complaint. The United States asks for leave to amend its Complaint, if the Court finds that additional details are needed to make the Complaint sufficient.  The suggestion of surprise is disingenuous.  There is no element of true surprise or

incomprehension on the part of the Defendants as to the filing of this case or the allegations in the United States' Complaint.  During the period of more than two years during which the parties exchanged views on the matter, the United States provided the Defendants (via their previous counsel) with copies of (1) every patient file selected for audit and upon which the United States bases its allegations herein and (2) the unedited evaluation of the medical coding expert[1] employed by the United States to determine if overbilling[2] has occurred, with the specific analysis and opinion as to each and every individual patient file that was audited. In turn, the Defendants responded, through an expert they employed, to each and every assertion of the United States' expert, with his own opinion and analysis. This would include of course, each of the nineteen (19) specific examples of false/fraudulent overbilling that are set forth in the United States' Complaint.  See Complaint paragraphs 23-28.  Each of the nineteen examples in the Complaint states the date of service, patient name, audit number (the number for the particular claim as it appears on the audit evaluation by the United States' expert that was supplied to the Defendants), the amount and the reason why it is adjudged to be a false/fraudulent overbilling, and that the United States would not have paid the amount claimed, had it known. The United States alleges as paragraph 18 of its Complaint: "Copies of audited patient files and the audit analysis and conclusions were provided to counsel for the Defendants".  Nowhere in the Defendants' Motion is there any assertion to the contrary.  There were 54 claims (out of 68) which the United States alleges are falsely/fraudulently overbilled.  If the Court deems it necessary to the creation of an adequate Complaint that the United States set forth in the same

---

[1] Although it might be obvious, the United States' expert was not an expert in assessing the mental state of the Defendants or legal conclusions to be drawn from the facts of the case.

[2] United States will use the term "overbilling" when referencing its expert's assessment only and it is not intending to imply that "overbilling" is, in this case, an act of less seriousness than, or is not synonymous with, false or fraudulent claims.

detail the remaining 35 falsely/fraudulently overbilled claims, the United States asks of the Court leave to amend its Complaint.

Finally, for purposes of this INTRODUCTION AND SUMMARY OF ARGUMENT IN RESPONSE, it is noted that the Defendants attack, not directly, but indirectly or by innuendo, the use of statistical mathematics, random sample methodology and extrapolation  (hereinafter, "statistical methods") in connection with this case. Such statistical methods are recognized scientifically, recognized by the courts and are used in the audit of all taxpayer financed healthcare programs, including and in addition to TRICARE, the programs that are the very largest, Medicare and Medicaid. Without statistical methods, there would be no practical, affordable way to monitor the more than two billion claims filed under these programs yearly (100,000,000 of which are TRICARE claims) and keep fraud in check.  Statistical methods will be discussed below, in response to the Defendants' Motion allegations that nearest approach a direct challenge to their use.

## ARGUMENT

## ARGUMENT I: THE UNITED STATES' COMPLAINT IS SUFFICIENT PER FRCP RULE 12(b)(6), RULE 8(a) AND RULE 9(b).

The United States has alleged that the Defendants violated the FCA in presenting false claims and in making and using false records to obtain payment of false claims. The Defendants have raised the issue of which version of the FCA (pre-2009 amendments or post-2009 amendments) should apply in this case. The period during which false/fraudulent claims were filed is alleged in the Complaint to be January 1, 2005 through June 30, 2008. The amendments to the FCA were effective May 20, 2009, in so far as they pertain to former § 3729 (a)(1). Existing authority in the Fourth Circuit would seem to hold that the amendment to § 3729(a)(1)

have no retroactive effect[3].  However, it does appear that Congress did give the 2009 amendment to § 3726 (a)(2) retroactive effect to June 7, 2008, which puts it within the time frame of the fraudulent conduct, but only by 21 days. If this has bearing on the arguments of the United States herein, it will be specifically mentioned.

The wording of what is now 31 U.S.C. § 3729 (a)(1)(A) relevant to this case should be as that provision was worded prior to the 2009 amendments and as then numbered: 31 U.S.C. § 3729 (a)(1)[4].  As well, the relevant wording of what is now, 31 U. S. C. 3729 (a)(1)(B) should be as that provision was worded prior to the 2009 amendments and as then numbered: 31 U. S. C. § 3729(a)(2).  The United States asks leave to amend its Complaint to make the aforesaid corrections.[5]  The full and proper wording of the relevant provisions of the FCA § 3729(a) is:

"(a)  **Liability for certain acts** – Any person who –

(1)  knowingly presents, or causes to be presented, to an officer or employee of the United States Government, or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;
(2)  knowingly makes, uses, or causes to be made or used, or false record, or statement to get a false or fraudulent claim paid or approved by the Government;"

The Defendants' Motion begins with a centered heading styled **"INTRODUCTION."** Therein the Defendants summarize their arguments. This is followed by a centered heading

---

[3] See *United States ex rel. Ahumada v. Nish* (hereinafter, "*Ahumada*") 756F.3d 268 (4th Cir. 2014), fn. 7 at 280.
[4] The wording in both versions of § 3729 (a)(1) remains unchanged as to the critical phase: "[anyone who] knowingly submits or causes to be submitted…."
[5] The case of *U.S. and Commonwealth ex rel. Hagood and Cotner v. Riverside Healthcare Assn. et al.* (hereinafter, "Hagood/Cotner") recently decided in this Court and appearing as Civil Action Number 4:11cv109, 2015 WL 1349982 (OPINION AND ORDER of March 23, 2015) appears to quote the post-amendment versions of § 3729 (a)(1) and (a)(2), for alleged false/fraudulent claim filing that largely occurred prior to the 2009 amendment. A similar anomaly appears in *United States ex rel. Rector v. Bon Secours Richmond Health Corporation (hereinafter, "Rector")*, 2014 WL 1493568 (E. D. Va.2014). It seems that the statutory language, pre or post amendment played no part in the decision in either case.

styled **"PROCEDURAL BACKGROUND"**. This would seem to be largely irrelevant, given

that the only issue before the Court is the sufficiency of the United States' Complaint.  This

heading is used as a forum for expressing displeasure with various aspects of the United States'

pursuit of the causes of action set forth in its Complaint.  Next appears a centered heading styled:

**"FACTUAL ALLEGATIONS IN THE AMENDED COMPLAINT."**  Under this heading

Defendants admit that defendant Satterwhite owns defendant Gastroenterology Specialists, Inc.,

quotes various parts of the Complaint (labeling them "broad and conclusory") and attaches as

Exhibit A, the "PROVIDER CONTRACT"[6], which at the bottom of each page of the substantive

part thereof , states "TRICARE Professional Provider Agreement". The PROVIDER

CONTRACT, between the Defendants and TRICARE's fiscal intermediary, Health Net Federal

Services, Inc. (hereinafter, 'Health Net') contains numerous references to TRICARE in its

provisions. Additionally, although the Complaint alleges that the Defendants submitted false

claims and did so "knowingly" per the statutory headings for Counts I and II, the Defendants

profess that there is no description of a scheme to submit the 4788 alleged false claims and that

the submissions of the Defendants alleged to be false/fraudulent claims were actually

"differences of opinion", the later seeming to be a factual defense the Defendants intend to offer,

rather than a fatal omission from the Complaint.

The Defendants finally present their legal assertions in support of the Motion under the

centered heading: **"ARGUMENT"**.

The Defendants then move directly to first subheading under **ARGUMENT,** which is

styled: **"I. STANDARD OF REVIEW UNDER FED. R. CIV. P. 12(b)(6)."** Under this

---

[6] Which the Defendants refer to as the "Professional Provider Agreement", failing to add "TRICARE Program" to give full title to the substantive portion of the document. The Defendants use the acronym "HGA" in reference to the PROVIDER CONTRACT. This appears to be an acronym that the Defendants have created.

subheading, the Defendants paraphrases the standard of review section in this court's OPINION AND ORDER of March 23, 2015 in *Hagood/Cotner*. The United States endorses the Standard of Review analysis set forth in the *Hagood/Cotner* OPINION AND ORDER and the recitation therein of the legal principles which must be considered in assessing the sufficiency of a complaint under Rule 12(b)(6), Rule 8(a) and Rule 9(b) of the Federal Rules of Civil Procedure (hereinafter, the "FRCP")

The Defendants follow with a subheading styled: **" II. THE FALSE CLAIMS ACT DOES NOT APPLYTO THE TRICARE CLAIMS DESCRIBED IN THE AMENDED COMPLAINT."** The Defendants then move directly to a sub-subheading under subheading **II**, which is styled: **"A. The Government Cannot State a Claim Based on Conduct that Occurred Prior to Enactment of an Expanded Version of the False Claims Act."** This sub-subsection of the Motion has been addressed hereinabove and the United States asks leave of the Court to amend its Complaint to cite the FCA numbering as it appeared prior to the 2009 amendments of what is now 31 U.S.C. § 3729 (a)(1)(A) and (B). As the Defendants have made an argument specific to the language of the pre-2009 version, the United States also seeks leave to add that the full language of the pre-2009 version, although it maintains in this Response that the language relevant to this case is unchanged.

Next the Defendants move to a further subdivision of sub-subsection **II A**, under a heading styled: "**1. The Government has no claim for relief for TRICARE claims that were never presented *to* the Government for payment or approval *by* the Government**."

Getting to the heart of their argument, the Defendants address "presentment" under § 3729(a)(1). Their argument is that there can be no FTA cause of action unless the submitter of a false claim submits it "directly" to the United States and receives payment "directly" from the

United States.  This argument fails for two reasons: (1) Health Net (the MCS contractor or fiscal intermediary to TRICARE) and PGBA (to whom Health Net has subcontracted processing, accounting and claims payment duties) are delegated some of the administrative duties of TRICARE and as to those delegated duties, have been considered synonymous with TRICARE (a claim submitted to either, is a claim submitted to the United States), and (2) the per-2009 FCA did not require physical presentment of a claim "directly" to TRICARE in order for there to be a claim presented to the United States.

In responding to the Defendants' Motion, the United States could find no case which says that a claim submitted to a fiscal intermediary of Medicare, Medicaid or TRICARE, is <u>not</u> a claim presented to the United States. Sec., e.g. *Hagood/Cotner* (where the Court refers to the Medicare, Medicaid and CHAMPUS as "Government Payors"); *United States ex rel. DeCesare v. Americare In Home Nursing* (hereinafter, "*DeCesare*"), 757 F. Supp. 2d 573 (E.D. Va. 2010).

Courts that have approached the issue of presentment under the pre-2009 FCA have recognized the fact that the relevant section, 31 U.S.C. § 3729(a)(1), reads: "[any person who] knowingly presents <u>or causes to be presented</u>, to an officer or employee of the United States…" (emphasis supplied). The operative language, "knowingly presents, or causes to be presented" is unchanged in the FCA as it appears after the 2009 amendments. In *Rector, supra,* the court finds 'the  FCA also reaches claims that are rendered false by one party, but submitted to the government by another" (citing *DeCesare). See also United States ex rel. Clausen v. Laboratory Corp. of America,* 290 F. 3d 1301 (11th Cir. 2002); *United States ex rel. Riley v. St. Luke's Episcopal Hosp.* (hereinafter, "*Riley*"), 355 F. 3d 370 (5th Cir. 2004); *United States ex rel. Schmidt v. Zimmer, Inc.* 386 F. 3d 235 (3rd Cir. 2004). In *United States v. Bornstein,* 425 U.S. 303, 96 S. Ct. 523, 46 L. Ed. 513, (1976), the Supreme Court found FCA liability when a

subcontractor to a company with a contract to supply the United States with military radios sent falsely branded parts knowing that the parts would be incorporated into the radios and the contractor would ask the United States for payment for those radios.[7]

A good summary of the basic contention in the Defendants' Motion appears at page 7 thereof : "To be clear, the complaint does not contain a single allegation that the government even made a single payment <u>directly</u> to the Defendants". (emphasis supplied). That statement misapprehends the law. There is nothing in the FCA that requires that the false claim be made "directly" to the United States or that the United States pay the false claim "directly" to the source of the false claim. Also, there is no case law which supports that proposition.  The Defendants' reliance on *Allison Engine Co. v. United States ex rel. Sanders* (hereinafter, "*Allison Engine*") 553 U.S. 662, 128 S. Ct. 128, 170 L. Ed. 2d 1030 (2008) and the recent decision in *Hagood/Cotner* for support of that argument, is entirely misplaced.

While the Defendants rely heavily on *Allison Engine,* they offer no analysis as to why that case is relevant to the pleading sufficiency Motion at hand. That omission may be motivated by the fact that in *Allisson Engine,* the Supreme Court is engaged in a post-trial assessment of the <u>sufficiency of evidence</u> to support a finding of FCA liability, not the pleading sufficiency of a FCA complaint.

Notwithstanding, the Defendants wed themselves to *Allison Engine*, asserting on page 12 of their Motion:

> " Even if the claims the Defendants submitted under the TRICARE program to Health Net were false,[quoting from Allison Engine] "recognizing a course of action under the FCA for fraud <u>directed at private entities</u> would threaten to transform the FCA into an all-

---

[7] At the time the relevant provision of the FCA was numbered as §5438 and read: "Every person who makes <u>or causes to be made</u>, <u>or</u> presents <u>or causes to be presented</u>, for payment or approval, to or by any person or officer [of the United States Government] ……" (emphasis supplied).

> purpose antifraud statute. [This] reading of §3729(a)(2), based on
> the language of the statute, gives effect to Congress' efforts to
> protect the Government from loss due to fraud but also ensures that
> "a defendant is not answerable for anything beyond the natural,
> ordinary and reasonable consequences of his conduct." Allison
> Engine, 553 U.S. at 672, quoting Anza v. Ideal Steel Supply Corp.
> 574 U.S. 451, 470, 126 S. Ct. 2123, 164 L.Ed.2d 720 (2006)."

This crystalizes the fallacy of the Defendant's argument. In *Allison Engine* the Supreme Court is addressing the wording of §3729(a)(2) and not §3729(a)(1), the section upon which the Defendants base their "direct" presentment/ "direct" payment argument. In *Allison Engine,* §3729(a) (1) is mentioned only in passing and only to say, without further analysis, that §3729(a)(1) has a presentment requirement. The case presented to the Supreme Court in *Allison Engine* involved an alleged false certification of compliance (a false document or record) given by a subcontractor (which in that case was Allison Engine Co., Inc. and its sub-subcontractors) to a shipyard that was contracted to the United States to build warships. At trial, the United States did not offered into evidence the invoices the shipyard submitted to the United States, to obtain a payment on its contract. Therefore, there was no proof that false documents from the subcontractors was relied upon by the United States in making payment. Further, there was no evidence that that the subcontractor intended the false document to be presented as part of the shipyard's claim to the United States for payment. Without proof of that intent (and proof that the false statement was relied upon by the United States), the fraud is a matter strictly between two private parties, the subcontractor and the shipyard. The use of the FCA without Government involvement (creating an "all purpose anti-fraud statute"), is to create a FCA a cause of action by one private party against another private party. The *Anza* case, cited by the court in *Allison Engine,* is a Racketeer Influence and Corrupt Organizations (RICO) case, wherein the Court addresses the potential abuses of private causes of action under RICO. The FCA is not

mentioned. Lest perspective be lost, the FCA creates a cause of action available <u>only</u> to the United States and subject to assertion <u>only</u> by the United States or "relators" authorized by statute to act in its behalf.

The United States has also pleaded in Count II of its Complaint, that the Defendants created and employed false documents or records to get a false claim paid, per (what should now be correctly referenced as) § 3729 (a)(2). The Defendants do not argue that a false document or record was not presented "directly" to the United States, even though that argument would be consistent with their assertion that the FCA requires "direct" presentment. That is perhaps because, in interpreting 31 U.S.C. § 3729(a)(2) (the pre-2009 amendment version) in *Allison Engine*, the Supreme Court held that there was no presentment requirement in § 3729(a)(2). FCA liability did not depend on evidence that the false claim of the subcontractor, based on a false record, had to be presented directly to the Government as part of Shipyards contract claims. There was however, a need for proof of the "intent" of the sub-contractor to have the false claim presented to the United States through the shipyard, when it billed on its contract with the United States. Specifically the Court noted:

> "This does not mean, however, as petitioners suggest, see Reply Brief 1, that § 3729(a)(2) requires proof that a defendant's false record or statement was submitted to the Government. While § 3729(a)(2) requires a plaintiff to prove that the defendant "present[ed]" a false or fraudulent claim to the Government, the concept of presentment is not mentioned in § 729(a)(2). The inclusion of an express presentment requirement in subsection (a)(1), combined with the absence of anything similar in subsection (a)(2), suggests that Congress did not intend to include a presentment requirement in Subsection (a)(2)."

128 S. Ct. at 2129

In the instant case, it is alleged in several paragraphs of the Complaint that the false/fraudulent Forms CMS-1500 were submitted by the Defendant to the United States through PGBA. Thus the United States has pled that the Defendants claim for payment were submitted.

The Defendants also offer *Hagood/Cotner* as support for their "direct" presentment/"direct" payment argument, without any analysis of its relevance to the case at hand. The reason for the Defendants' silence is that *Hagood/Cotner* never addresses the question of presentment under §3729(a)(1). The relators' complaint in *Hagood/Cotner* was dismissed because they were never able to credibly allege specific acts of false billing to the United States, whether submitted "directly" or through a fiscal intermediary or, for that matter, submitted to anyone at all. In the case at hand, the United States' Complaint gives 19 specific examples of false claims (and can add 35 more) with, as to each, who submitted the claim, what is the falsity in the claim, when it was submitted, what patient it related to, why it was false, to whom it was submitted and, the amount paid due to the claim being false.

The Defendants offer that their PROVIDER CONTRACT with Health Net is a "private contract" and argue, without citing authority, that the FCA requires that the United States have a contract with the entity submitting a false claim, before it has a cause of action under the FCA. That requirement cannot be found in the FCA and those few Courts that have encountered the unusual assertion that it does, have held to the contrary. *Riley*, supra, citing *Peterson v. Weinberger*, 508 F.2d 45, 52-53, (5Th Cir. 1975), c*ert. denied*, which in turn quotes *United States ex rel. Marcus v. Hess*, 371 U.S. 537,544-45, 63 S. Ct. 379, 87 L. Ed. 443 (1943);

The one case cited by the Defendants for the proposition that a contract is needed, is *Taylor v. United States and Health Net*, 2014 WL 8028842 (E.D.N.C. 2014), district court's dismissal affirmed *per curiam*, 602 Fed. Appx.  570  (4th Cir. 2015).  That case concerned a

physician claiming wrongful termination of his TRICARE provider status and alleging liability against TRICARE under the Administrative Procedure Act, because its termination decision was "arbitrary and capricious". The physician's claims against Health Net alleged its liability for breach of North Carolina's Unfair and Deceptive Trade Practices Act (UDTPA) and for a *Bivens* constitutional rights violation.  Court held that the TRICARE decision was neither arbitrary nor capricious and that for various reasons, including that the Provider Contract governed the relationship between the physician and Health Net, none of the claims against Health Net were claims upon which relief could be granted. There is no mention of or reference to the FCA.

Continuing to base their argument on their "direct" contract/"direct" payment theory, the Defendants next offer arguments under a further division of subsection **A**, styled: **"2.  In the absence of any well-pleaded allegations of false statements or fraudulent course of conduct, the amended Complaint should be dismissed."** In this instance, the Defendants begin their attack on the statistical methods used to reveal the false claims and determine their magnitude.[8] They say that the Complaint is insufficient without further description of the audit and the statistical methods used in connection with the audit.

The Defendants complain that the alleged false/fraudulent overbillings are not stated with sufficient particularity and does not allege "the what, where, when, and how" of the alleged false claims. The United States is at a loss to respond, as the Defendants seem to suggest that the Complaint must contain the definition of every CPT code[9] (Complaint ¶ 19), offer a hypothesis

---

[8] The United States concedes that it did not "plead the math."  The total claims submitted by the Defendants  during the audit period (6023),  multiplied by the percentage of claims that were false or fraudulently overbilled (79.5%) equals 4,788 false/ fraudulent billings. The United States asks leave to "plead the math" and add elements of the audit and statistical method, should the Court grant the Defendants' Motion for failure of the United States' so to do.

[9] See PROVIDER CONTRACT, Defendants' Exhibit 1, paragraph 2.16.  See also *Hagood/Cotner* at 7, showing familiarity with CPT codes.

as to why there was no evidence that the billed service was ever provided (Complaint ¶ 20); offer a hypothesis as why the Defendants did not follow the TRICARE Reimbursement Manual[10] in submitting claims for the services of Physician Assistants and Nurse Practitioners (Complaint ¶ 21), offer a hypothesis as to why the defendants combined up coding with false/ fraudulent over billing for Physicians Assistants and Nurse Practitioners (Complaint ¶ 22); offer a hypothesis as to why the Defendants engaged in unbundling (Complaint ¶ 23) and/or  offer a hypothesis as to why the Defendants submitted claims for services not rendered (Complaint ¶24). The only specific omission they identify is that the United States did not describe the particular patient's medical complaint and the Defendants' notes on that patient's treatment.

The United States alleges in paragraph 1 of its Complaint:

> "This is an action to recover treble damages and civil penalties on behalf of the United States under the False Claims Act (FCA), 31 U.S.C. § 3729-33, arising from false and/or fraudulent statements, records, and claims made or caused to be made by Satterwhite and GS, Inc. (hereinafter, collectively the "Defendants") in violation of the FCA."

This allegation is followed by paragraph 2 of the Complaint:

> "This action is brought against the Defendants for submitting and/or causing  the submission of false claims, to the Department of Defense TRICARE Program, for health services rendered to and for military dependents, retirees and active duty military personnel."

In paragraph 16 of the Complaint, the United States alleges:

> "From January 1, 2005 through June 30, 2008, the Defendants executed a scheme by which they obtained health care benefit payments from TRICARE to which they were not entitled, by submitting and causing to be submitted false and fraudulent claims to TRICARE, through its subcontractors."

_____
[10] See PROVIDER CONTRACT, Defendants' Exhibit 1, Paragraph 1.36

In paragraphs 19 through 24 of the Complaint, the United States alleges six (6) particular types of false/fraudulent overbilling in which the Defendants engaged  and with regard to each of the types of false/fraudulent overbilling, provided specific examples (as noted previously) giving the name of the person or entity submitting the claim, the date of the treatment being billed, the patient's name (by initials known to the Defendant via information provided them prior to commencement of this action), what was the false element of the particular claim, the fact that TRICARE paid the claim and the amount of damage to TRICARE from that particular claim.  The United States had, in previous paragraphs, alleged the nature of the TRICARE program, its use of Managed Care Support (MCS) contractors pursuant to 32 C.F.R. § 199.17(a)(ii) to perform duties and function it would otherwise need to perform through government employees and that the Managed Care Support (MCS) contractor or fiscal intermediary in this case, Health Net, delegated by subcontract to PGBA, some of the contractual duties it had contracted with TRICARE to perform.  The duties subcontracted to PGBA included processing of claim submitted, the money transfer to the claiming provider, thereby paying the claim,  and receipt of the money appropriated by Congress and maintained in the United States Treasury for the purpose of paying the claim.

The United States did not plead the detailed mechanics of how TRICARE claims are processed and how money is paid by TRICARE to health care providers.  Although it does not appear to be a lynchpin of the Defendants' Motion (the Motion not calling into question the process outlined in paragraphs 9 through 15 of the Complaint), the United States could plead the details of claim processing and money payment set forth in Exhibit 1 attached, and asks for leave to do so, should the Court think it necessary in order to make the Complaint sufficient.

15

Of all of the cases which are cited in the Defendants' Motion, only one might have relevance to the presentment issue the sufficiency of a FTC complaint.  That case is *United States v. Triple Canopy, Inc.* (hereinafter, *"Triple Canopy"*), 775 F.3d 628 (4th Cir 2015). In *Triple Canopy,* the court directly addresses the sufficiency of allegations of submission of false claims and submission of false documents or records. There, however, any similarity with the instant case ends.  Most significantly, *Triple Canopy* addresses the issues in a situation where the alleged false claim filer <u>does</u> have a direct contract with the United States.  It also involves a false certification, rather than a false bill for money, and whether the false certification was material to the United States' making payment under the contract. Other dissimilarities include the fact that  the alleged false claims occurred after the 2009 amendments and therefor, any statutory interpretation involved the operative FCA provisions now numbered 31 U.S.C. § 3927 (a)(1)(A) and (B).

Both the Fourth Circuit and the district court below, as would be the case in almost every FCA case where there was a direct contract, gave consideration the question of whether *Triple Canopy* was an FCA case or a breach of contract case. Here, as the Defendants have so vigorously argued, they have no contract with the United States.  Finding *Triple Canopy* to be a FCA case, the Fourth Circuit reversed the district court on its FRCP Rule 12 (b)(6) dismissal of the complaint for pleading the FCA insufficiently. While the Defendants go on to assert that the false/fraudulent claims alleged by the United States are "misunderstandings" , differences of opinion or disagreements similar to contract disputes. These all too typical defenses presented in an answer in any fraud case and, as defenses, might be more relevant if the Defendants did indeed have a contract with the United States.

As a final division under subsection **A**, the Defendants argue under a heading styled:

**"3. The Amended Complaint makes no allegations that the Defendants ever knowingly submitted false claims to or for payment by the Government."** The United States is at a loss to respond to this allegation. In the section of the Complaint styled CLAIMS FOR RELIEF, the United States alleges via the statutory reference in both Courts I and II, that the Defendants "knowingly" submitted false/fraudulent claims, and/or used false documents to create the claims, incorporating by reference the specific examples set forth in paragraphs 19 through 24 of the Complaint. As "knowingly" under the FCA includes not only actual knowledge but also, "deliberate ignorance" of and "reckless disregard" of the truth, there seems no other conclusion than that the filing of 4688 false/fraudulent claims was done "knowingly". The United States does concede however that the Complaint does not allege specifically the statutory definition of "knowingly" as it appears in the FCA and that "knowingly" is not alleged at every opportunity. FRCP Rule 9(b) states that with regard to pleading fraud; "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." However, the United States seeks leave to amend its Complaint, should the Court grant the Defendants' Motion for insufficient pleading of knowledge or intent on the part of the Defendants.

So too, the United States is at a loss to respond to the Defendants' assertion that it did not plead the requisite scienter or materiality. In each of the 19 examples of false/fraudulent claims, in the Complaint, it is noted that the false or fraudulent claims "caused" TRICARE to overpay the Defendants. Scienter of the false claim filer, equates to the allegation that a false claim was "knowingly" filed. Quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F. 3d 776, 785 (4ht Cir. 1999); "Materiality depends on whether a false statement has a natural tendency to influence agency action or is capable of influencing agency action." The Complaint of the United States alleges that the false representations in the Defendants' forms CMS-1500 was the

only reason the amount billed was paid and that the United States would not have paid what it

paid, had it known the falsity.

Finally, the section of the FCA defining "knowingly", as it appeared prior to the 2009

amendments and as numbered 31 U.S.C. § 3729(b), has three definitions of "knowingly"

concludes with the phrase "and no proof of specific intent to defraud is required".

There is no requirement on the part of the United States that it offer in its Complaint, a

hypothesis as to the Defendants' state of mind. Further support for this argument lies in the

definition of a "claim", found in § 3729(c).  A claim under the FCA is defined:

> "For purposes of this section, a 'claim' includes any request or
> demand, whether under contract or otherwise, for money or
> property which is made to a contractor, grantee or other recipient if
> the United States Government provides any portion of the money
> or property which is requested or demanded, or if the government
> will reimburse such contractor, grantee or other recipient for any
> portion of the money or property which is requested or demanded".

While this section may or may not define what is needed to prove presentment under §

3729(a)(1), the Defendants cannot maintain that the submission of the Forms CMS -1500 was

not the submission of a claim.

Finally, concluding their allegations that the Complaint is insufficiently pled, the

Defendants assert what appears to be much the same argument they made under heading **II** of the

Motion, in two sections relating the United States causes of action for Common Law Fraud and

Unjust Enrichment.

With regard to Common Law Fraud, the argument appears under a heading styled: **"III**

**THE GOVERNMENT HAS NOT STATED A CLAIM FOR RELIEF FROM COMMON**

**LAW FRAUD."** This argument asserts that Federal common law is applicable to pleading

standards for Common Law Fraud. The United States does not disagree. As the pleading

standards recited in *Carlucci v. Han*, 987 F. Supp.2d. 709 (E.D.V.A. 2012) are similar to those noted above as to FTA claims, the sufficiency of pleading of Count III of the Complaint would stand or fall on the same arguments offered for the sufficiency of Counts I and II of Complaint. In Count III of the Complaint, paragraph 36 incorporates by reference all allegations of false/fraudulent claims stated with regard to the FCA allegation in Courts I and II. The United States maintains that these allegations, and those made specifically in Court III, constitute a sufficient pleading for Common Law Fraud.

The Defendants then add to their Common Law Fraud argument under heading **III**, a subheading styled: **"A. The Government Cannot Recover in Tort for Common Law Fraud for Breach of Contract."** Assuming for the sake of argument that Common Law fraud is a tort based cause of action, the Defendants seem to be saying that a breach of their contract with Health Net does not create a tort claim for the United States. Their unstated assumption is that there must be "direct" contract between the Defendants and the United States in order to have a Common Law Fraud cause of action, much as there must be a "direct" contract with the United States in order for there to be an FTCA claim. This again misapprehends the law. Common Law Fraud is not dependent on the existence of a contract and is a cause of action available when there is no contract, "direct" or otherwise.

Adding another variation to the attack on Common Law Fraud, the Defendants next argue under a heading styled: **"B. The Government's Analysis of an "Audit" is not Entitled to the Assumption of the Truth and does not Establish a Claim for Fraud."** This is a factual argument that will certainly be disputed by the United States. The outcome will depend on expert witness testimony and is something that must be decided by a trier of fact, when all of the facts are presented. It cannot be decided in a motion to test the sufficiency of pleadings.

The Defendants' concluding attack on the sufficiency of the Complaint is under a heading styled: **"IV. THE GOVERNMENT CANNOT HAVE A CLAIM FOR UNJUST ENRICHMENT IF IT NEVER CONFERED A BENEFIT ON THE DEFENDANTS".** This argument is a remake of the argument that there must be a "direct" contract between the Defendants and the United States in order for them to have the presentment. That assertion once again misapprehends the law. Unjust Enrichment, like Common Law Fraud, is not dependent on contract and is indeed, a remedial cause of action, to be employed when there is no contract. Further, when there is a direct contract, an unjust enrichment cause of action must be dismissed. See, district court decision in *Triple Canopy*, 950 F. Supp. 2s 888 (E.D.V.A 2013) and *Aron Structures, Inc. v. Schwartz*, 846 F. 2d 923, 926 (4th Cir, 1988). The unjust enrichment cause of action is dependent on the reliance the injured party on the false representations.  While unjust enrichment may be a quasi-contractual remedy, it cannot exist beside a contract remedy.

Concluding the response of the United States to the Defendants' assertion that the FCA is not applicable to this case, it is noted that on pages 6 and 14 of the Defendants' Motion, there is an attack on the use of statistical methods in this case. The major reason for this use of the statistical methods for fraud control in federally finances medical payment programs that there is no other method which can, as a practical matter, be used for auditing the hundreds of thousands of claims filed these programs every day. The alternative of auditing every claim (or even 1% of all claims) would be economically prohibitive, given the number of auditors that the United States would need to hire. The alternative of no check or verification of claims at all, is frightening in terms of the cost of the fraud that would ensue. This Court has found statistical sampling and extrapolation to be consistent with due process and has quoted with favor decisions in other circuits which endorse the use of statistical sampling and extrapolation.  *See Portsmouth*

*Orthopaedic Associates* v. *Kathleen Sebelius, Secretary,* Civil Action No. 2:13cv30, Magistrate Judge's Report and Recommendation (ECF Doc. 26), adopted and approved in full by Judge Smith (ECF Doc. 33).

In addition, statistical sampling and extrapolation have been widely accepted by other federal courts and used in various types of litigation. *See, Mich. Dep't of Educ. v. U.S. Depart. Of Educ.,* 875 F.2d 1196 at 1205 (6th Cir. 1989) (observing that "mathematical and statistical methods are well recognized as reliable and acceptable evidence in determining adjudicative facts") (quoting *State of Georgia v. Califano*, 446 F. Supp. 404, 409 (N.D. Ga. 1977)); *United States v. Jones*, 511 Fed. App'x 420, 2013 WL 85799 (6th Cir. Jan. 9, 2013) (upholding use of sampling to calculate loss amount for sentencing in criminal health care fraud case); *United States v. Cabrera-Diaz*, 106 F. Supp. 2d 234 (D.P.R. 2000) (upholding use of statistical sampling in FCA case); *United States v. Fadul* (hereinafter, "*Fadul*"), 2013 WL 781614 (D. Md. Feb. 28, 2013) (granting government motion for summary judgment as to damages in FCA case based upon statistical sampling and extrapolation); *Jones v. Georgia*, 389 U.S. 24, 19 (1967) (using statistics to reverse state supreme court decision that there was no bias in jury selection); *United States v. Lahey Clinic Hosp., Inc.* 399 F.3d 1, 18 n.19 (1st Cir. 2005) (noting that "sampling of similar claims and extrapolation from the sample is a recognized method of proof") (citing cases); *United States v. Maceo*, 873 F.2d 1 (1st Cir. 1989) (upholding use of sampling in criminal trial); *Yorktown Med. La., Inc. v. Perales* (hereinafter, "*Yorktown*"), 948 F.2d 84, 89-90 (2d Cir. 1991) (approving the use of sampling and statistical evidence to determine Medicaid overpayment); *Ill. Physicians Union v. Miller* (hereinafter, "*Ill. Physicians*"), 675 F.2d 151, 155 (7th Cir. 1982) (approving use of statistical samples in Medicaid reimbursement findings); *Blue Cross & Blue Shield of N.J. v. Phillip Morris, Inc.*, 113 F. Supp. 2d 345, 372-75 (E.D.N.Y. 2000)

(in RICO case, stating that "[t]he use of statistical evidence and methods in the American justice system to establish liability and damages is appropriate").

For government benefit programs, including Medicare and Medicaid, the use of statistical sampling and extrapolation for determining overpayments is both longstanding and commonplace. *Mile High Therapy v. Bowen*, 735 F. Supp. 984 (D. Colo. 1988) *See also Ratanasen v. State of Cal., Dep't of Health Servs.*, 11 F.3d 1467, 1471 (9th Cir. 1993) (joining other circuits in "approving the use of sampling and extrapolation as part of [Medicare] audits . . . provided the aggrieved party has an opportunity to rebut such evidence"); *Ill. Physicians, supra at*, 155 (7th Cir. 1982); *Chaves County Home Health Serv. v. Sullivan*, 931 F.2d 914, 919 (D.C. Cir. 1991).

Those courts that have addressed the issue as it arose in FCA cases, have approved the use of sampling evidence.  *See Yorktown, supra at*, 90 (2d Cir. 1991); *United States ex rel. Loughren v. Unumprovident*, 604 F. Supp. 2d 259 (D. Mass. 2009).


## ARGUMENT II - THERE ARE NO GROUNDS FOR DISMISSING ANY COUNT OF THE UNITED STATES' COMPLAINT BASED ON STATUTES OF LIMITATION

The Defendants begin their statute of limitations argument under a heading styled; "**V. THE GOVERNMENT'S CLAIMS ARE BARRED BY STATUTES OF LIMITATION.**" They then move directly to a subheading styled: "**A. The Defendants may Raise the Affirmative Defense of the Statute of Limitations in a Rule 12(b)(6) Motion.**"  In responding generally to the Defendants' statute of limitation arguments, the United States notes that a defendant can raise statute of limitation issues in a FRCP Rule 12 (b)(6) motion, but the motion can be granted only if the decision requires no additional facts outside of the pleadings, of

documents submitted therewith,  and no disputed facts are yet to be proven.  *United States v. Americus Mortgage*, 2013 WL 4829271 (S.D. Tex. 2013).

By way of illustration of the facts that still need to be proven, by one side or the other, is the existence and content of the Tolling Agreements between the parties. For purposes of clarity of argument, the Tolling Agreements between the parties covered all statutes of limitation applicable to the case and tolled the running of those statutes, commencing March 1, 2013 and continuing through March 18, 2015, the date the United States filed suit. As an example, the United States attaches as Exhibit 2, a copy of the final Tolling Agreement between the parties. Stated without adornment, all time limits for commencing this suit stopped running on March 1, 2013. All calculations of time limits count back from March 1, 2013.

The Defendants first attack the United States' FTC claims under a subheading styled: "**B. Any FCA Claim More than Six Years Old Must be Dismissed.**". Following that is a recitation of limitation periods for FCA cases as they appear in 31 U.S.C. § 3731(b). That section contains two applicable time limitations:

> "(1)    6 years after the date on which the violations were committed, <u>or</u>
>
> (2)    3 years after the date when material facts became known, or reasonably should have been known, <u>by the official of the United States charged with responsibility to act in the circumstances</u>, but in no event more than ten years after the date on which the violation is committed." (emphasis supplied)

The Defendants assume that the United States is relying on § 3731 (b)(1). It is not. The United States is relying on § 3731 (b)(2) and the "or" which connect the two provisions.

The underlying facts, up which this case is based, were made known and "became known, or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances…" on July 27, 2011. The official "charged with

responsibility to act in the circumstances" is the United States Attorney General and specifically

in this case, and by delegation, the United States Attorney for the Eastern District of Virginia.

While, as noted in *United States ex rel. Sanders v. North American Bus.*, 546 F. 3d 288 at fn.2

(6th Cir. 2008), the Fourth Circuit has yet to rule directly on this issue, other courts that have

ruled on this issue have found that official to be the Attorney General of the United States (or the

Department of Justice).  See *Untied States v. Wells Fargo Bank, N.A.,* 972 F. Supp. 2d 593 (S.D.

NY 2013); *United States v. Macomb*, 763F. Supp. 272 (M.D. Tenn. 1990); *United  States v.

Incorporated Village of Island Park*, 791 F. Supp. 354 (E.D. NY 1992); *Jana, Inc. v. United

States*, 34 Fed. Cl. 447, n. 6 (1995); *United States v. Zavoral*, 2014 WL 5361791 (D. Minn.

2014)[11].  However, it had been suggested that, depending on the circumstances of the case, a

person other than the United States Attorney General could be "the official of the United States

charged with responsibility to act in the circumstances".  See *United States ex rel. Frascella v.

Oracle Corp.*, 751 F. Supp. 2d 842 (E. D. Va. 2010).

Specific to this case, the United States Attorney for the Eastern District of Virginia

(Newport News Office) became aware of potential FCA and other causes of action against the

Defendants by receipt of a letter and report from a Department of Defense investigative agency,

on July 27, 2011.[12]

Under the facts so offered, the United States under 31 U.S.C. § 3731 (b) had to file suit

within three years of July 27, 2011 (by July 27, 2014). This, and any other, statutes of limitation

applicable to this case, ceased to run on March 1, 2013. Therefore, the suit was filed within the

---

[11] But cf. *United States v Tech Refrigeration*, 143 F. Supp. 2d 1006 (N.D. Ill. 2001)
(distinguishable due to the unique nature of AMTRAC, the defrauded quasi-independent entity.
[12] The letter, date stamped received July 22, 2011, contains privileged investigation information.
It will be produced, if necessary for the Court to rule on the Defendants' Motion, in redacted
form or *in camera*, as the Court may direct.

three (3) year window provided by statue. Section 3731(b) also provides that the United States cannot sue on any alleged false claim submitted more than ten (10) years before the date of tolling (which without a Tolling Agreement, would usually be the date of filing suit). In the instant case, the statutory limitation time ceased to run on March 31, 2013. Therefore, only claims submitted before March 1, 2003 would be time barred. In the instant case, the United States alleges that false claims were filed commencing January 1, 2005. Therefore, no alleged false claims submitted by the Defendants would be time barred.

Next, the Defendants assert a statute of limitations defense as to the Common Law Fraud case of action asserted in Court III of the Complaint. They do so under a heading styled: **"C. The Common Law Fraud Claims are Time Barred by the Two Years Statute of Limitations"**.

Noting again that the determination of the applicability of any statute of limitations in this case will require a decision on disputed or unproven facts, the United States asserts that the state statute relied upon by the Defendants is not applicable to this case. Limitations on civil actions brought by the United States, are controlled by federal law and conflicting state laws are "without effect". United States Constitution, Articles III and VI; *Maryland v. Louisiana*, 451 U. S. 725, 746, 101 S. Ct. 2114; 68 L. Ed. 2d 576 (1987). Specifically, as to this case, the relevant statute is 28 U.S.C. § 2415. That statute reads, in pertinent part:

"**Time for commencing actions brought by the United States -**

(a) Subject to the provisions of section 2416 of this title, and except as otherwise provided by Congress, every action for money damages brought by the United States or as offices or agency thereof which is <u>founded upon contract express or implied in law or in fact,</u> shall be barred unless the complaint is filed within <u>six years</u> after the cause of action accrues….

(b) Subject to the provisions of Section 2416 of this title, an except as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency

thereof which is <u>founded upon a tort</u> shall be time barred unless the
complaint is filed within <u>three years</u> after the right of action first
accrues….
Whichever last occurs"  (emphasis supplied)

As noted in 28 U.S.C. § 2415, the limitation periods set forth in both sections (a) and (b)

are "subject to the provisions of section 2416 of this title". The pertinent part of 28 U.S.C. §

2416 is subsection (c):

**"Time for commencing actions brought by the United States – Exclusions**

For purposes of computing the limitations period established in
section 2415, there shall be excluded all periods during which –

(c)  facts material to the right of action are not known or
reasonably could have been known <u>by an official of the United
States charged with the responsibility to act in the circumstances</u>"
(emphasis supplied)

Section (c) of 28 U. S. C. 2416 essentially tolls the running of either the three year or the

six year limitation period, until the "official" knows (or reasonably could have known) the facts

material to the  right of action (Common Law Fraud in this instance).   28 U. S. C. § 2415 and §

2416 are general limitations statutes and are not incorporated by Congress into a specific statute

such as the FCA. As to these general statutes, a single "official of the United States charged with

responsibility to act in the circumstances" has not been named in these statutes or the case law

interpreting these statutes.  By implication, if not directly, this is because the "official" who

acquires the knowledge will vary from case to case. As to the instant case, if someone other than

the United States Attorney General is the "official", a factual determination will be needed as to

what that "official" knew, when did he/she know it and what level of knowledge did he/she

acquired, sufficient to commence the running of the three year or six year limitation period.

Depending on the result of the factual inquiry, but noting that in order for the appropriate

limitation period to have expired, the "official" in the instant case would have had to acquire the

requisite knowledge before March 1, 2010 for the three year period and before March 1, 2007

(16 months before the end of the audit period) for the six year period. There are insufficient facts

alleged in the Complaint, or offered by affidavit or otherwise in the Defendants' Motion, to

allow the Court to arrive at an answer with any degree of certainty, at this point.

As there is no basis in established, undisputed facts, either in the Complaint or the

Defendants' Motion, which would allow the Court to determine when the limitation period began

to run as to the Common Law Fraud Count of the Complaint, this aspect of the Defendants,

Motion should be denied. However, should the Court determine that the Complaint should

address statute of limitations issues (in anticipation of their offer as affirmative defenses in the

Defendants' Answer), the United States asks the Court for leave to file an amended Complaint.

The Defendants conclude their statute of limitation argument with an assertion that Count

IV of the Complaint (Unjust Enrichment) is time barred. This argument appears under a

subheading styled: **"D.  The Government's Implied Contractual Claim for Unjust**

**Enrichment is Barred by a Three Year Statute of Limitations"**.

As with the Common Law Fraud Count of the Complaint, the Defendants continue with

regard to Unjust Enrichment, the untenable position that state law applies, when state law is

obviously pre-empted by 28 U.S.C. § 2415 and 2416.

It is well established the unjust enrichment is a cause of action that sounds in implied

contract or quasi-contract and the six year limitations period in 25 U.S.C. § 2415 (a) applies in

suits brought by the United States. *United States v. Douglas*, 626 F. Supp. 621 (E.D.Va. 1985);

*United States v. First National Bank of Cicero*, 957 F. 2d 1365 (9th Cir, 1986); J*ackowitz v.*

*United States*, 533 F. 2d 538, 209 Ct. Cl. 489 (1976); *United States v. City of Palm Beach*

*Gardens*, 635 F. 2d 337 (5th Cir. 1981); *United States v. Lamb*, 524 F.2d 799 (9th Cir. 1975).

The analysis of how the six year provision of 28 U. S. C. 2415(a) would apply to the Unjust Enrichment Count in the Complaint, is the same as that offered above with regard to Common Law Fraud. So too, is the analysis of the outstanding factual issues which need to be addressed before the Court could grant the Defendants' Motion based on any of the statute of limitation issues raised, is the same .  This is particularly so, when addressing the issue in the context of the correct, applicable federal statute. While it is the position of the United States that the Unjust Enrichment cause of action (as with the other causes of action in this case) cannot be adjudicated pursuant to a Rule 12(b)(6) motion, should the Court hold that the Complaint of the United States is insufficient on statute of limitation issues applicable the Unjust Enrichment Count , the United States asks leave of Court to file an amended Complaint.

## CONCLUSION

For the forgoing reasons, the Defendants' Motion to Dismiss should be denied. In the alternative, should the Court grant the Defendants' Motion, in whole or in part, the United States asks the Court for leave to file an amended Complaint.

Respectfully submitted,

UNITED STATES OF AMERICA,
Plaintiff

DANA J. BOENTE
United States Attorney

By:  _/s/_____
George M. Kelley, III
Assistant United States Attorney
Virginia Bar No. 13825
Attorney for United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Telephone:  (757) 441-6331

Facsimile:   (757) 441-6689
Email:   george.kelley@usdoj.gov
     *Counsel for Plaintiff United States of America*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the 4th day of August, 2015, I will electronically file the

foregoing and RESPONSE OF PLAINTIFF UNITED STATES OF AMERICA TO

DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT with the Clerk of Court

using the CM/ECF system, which will then send a notification of electronic filing (NEF) to the

following filing user(s):

Ann B. Brogan, Esq.
John M. Ryan, Jr., Esq.
Crowley, Liberatore, Ryan & Brogan, PC.
Town Point Center, Suite 300
150 Boush Street
Norfolk, Virginia 23510

/s/_____
George M. Kelley, III
Assistant United States Attorney
Virginia Bar No. 13825
Attorney for United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Telephone:  (757) 441-6331
Facsimile:   (757) 441-6689
Email:  george.kelley@usdoj.gov
*Counsel for Plaintiff United States of America*