**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

UNITED STATES OF AMERICA,

    Plaintiff,

  v.          Civil Action No. 2:15-cv-111-RGD-DEM

CYNTHIA K. SATTERWHITE and
GASTROENTEROLOGY SPECIALISTS, INC.,

    Defendants.

**DEFENDANTS' REBUTTAL BRIEF TO PLAINTIFF'S RESPONSE**
**TO MOTION TO DISMISS AMENDED COMPLAINT**

Defendants, Cynthia K. Satterwhite and Gastroenterology Specialists, Inc. ("GSI"), by

counsel, hereby file their rebuttal to the Response of the Plaintiff United States of America (the

"Government") to Defendants' Motion to Dismiss.

**I.**  **The Government Ignores the Standard for Pleading Causes of Action Applicable to**
   **all Civil Actions filed in Federal Court.**

In its Response to the Motion to Dismiss the Amended Complaint, the Government—

- Acknowledged that the Amended Complaint incorporates a later version of the

  False Claims Act that was not in effect at time of the actions of which it

  complains (Response at 4-5);

- Acknowledged that it did not "plead the math" in the Amended Complaint to

  explain how it arrived at very precise number of false claims that it alleged

  Defendants submitted (Response at 13, n.8);

- Acknowledged that it did not "plead the detailed mechanics of how TRICARE

  claims are processed and money is paid by TRICARE to health care providers"

  (Response at 15);

- Suggested three times that it was "at a loss" as to how to plead anything more than its conclusory allegations, based on its audit of the Defendants' medical records, that it had "*adjudged* to be a false/fraudulent overbilling" (Response at 3, emphasis added) or plead any facts to support the bare allegations of the Amended Complaint that the Defendants submitted claims with the requisite scienter that the Defendants knew they were false and that the Government would rely on them (Response at 13); and

- Sought leave of this Court at least ten times to amend its Complaint for a second time (Response at 1, 2, 4, 5, 7 (twice), 13 n.8, 15, 17, 27, 28).

The Government appears to suggest that, because it allegedly provided Defendants' previous counsel with copies of Defendants' own patient records reviewed by the auditor, somehow empowers it to avoid the requirement that it plead more than conclusory statements without reference to specific factual context alleged in the complaint. Response at 3.  Regardless of what information the Government has, or has not, ever provided the Defendants, or any differences in the parties' perspectives on the elements of the Government's cause of action brought under the False Claims Act (FCA), the Government cannot survive a motion to dismiss its Amended Complaint because it pleaded only the bare elements of a cause of action that do not comply with the pleading requirements of Rules 8(a) and 9(b) of the Federal Rules of Civil Procedure.  *Ashcroft v. Iqbal*, 556 U.S. 662, 686-687 (2009).  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)

To effectively plead a cause of action under the version of the FCA in effect prior to 2009, a plaintiff must allege specific facts that show four distinct elements, each of which should be plausible, based on the facts alleged:  (1) there was a false statement or fraudulent course of

conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that involved a claim presented to the government for payment. *United States ex rel. Ahumada v. NISH*, 756 F.3d 268, 280 (4th Cir. 2014); *Riverside Healthcare Ass'n*, 2015 U.S. Dist. LEXIS 37134, at *21 (citing *United States v. Triple Canopy, Inc.,* 775 F.3d 628, 634 (4th Cir. 2015)); *United States ex rel. Rostholder v. Omnicare, Inc.,* 745 F.3d 694, 700 (4th Cir. 2014).  See *Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662, 673, 128 S. Ct. 2123, 170 L. Ed. 2d 1030 (2008).  Although the Government added in the Amended Complaint a few details allegedly taken from the Defendants' patients' records, the Government failed to plead any particular facts in the Amended Complaint regarding an actual claim that either Defendant ever knowingly presented, or caused to be presented, to the Government for payment or knowingly used to get Government payment or approval.  Instead, the Government asks this Court to accept its own summary conclusions, without any specific allegations regarding the Defendants' billing practices or the specifics of any scheme, that, if proven, would show the Defendants knew claim forms the Defendants submitted to PGBA for payment were false claims that Defendants knew would be, and actually were, presented to the Government for payment or approval.

A.      **The Amended Complaint does not Contain any Well-Pleaded Allegations that the Alleged False Claims Defendants submitted to PGBA were ever Actually Presented to the Government.**

In its decision *United States ex rel. Atkins v. McInteer*, cited with favor by and within the Fourth Circuit, the Court of Appeals for the Eleventh Circuit explained the importance of properly pleading a cause of action under the False Claims Act:

> The submission of a false claim is the *sine qua non* of a False Claims Act violation. Without the presentment of a claim, there is simply not actionable damage.  In the healthcare context such as the one before us, the False Claims Act does not create liability merely for a health care provider's disregard of Government regulations or improper internal policies **unless, as a result of such acts, the provider knowingly asks the Government to pay amounts it does not owe.**

3

FCA claims must also be stated with particularity pursuant to Rule 9(b). . . . Particularity means that a plaintiff must plead facts as to time, place, and substance of the defendant's alleged fraud, **specifically the details of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them**.

Rule 9(b)'s directive that the circumstances constituting fraud or mistake shall be stated with particularity **does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government.**

We cannot make assumptions about a False Claims Act defendant's submission of actual claims to the Government without stripping all meaning from Rule 9(b)'s requirement of specificity or ignoring that the true essence of the fraud of a False Claims Act action involves an actual claim for payment and not just a preparatory scheme.  Rather, if Rule 9(b) is to be adhered to, **some indicia of reliability must be given <u>in the complaint</u> to support the allegation of an actual false claim for payment being made to the Government.  As the district court stated in its order dismissing [the plaintiff's] complaint, the whistle must be blown not only loudly, but with Rule 9(b) <u>particularity in the complaint</u> before the courts will listen.**

470 F.3d 1350 (11th Cir. 2006), *citing United States ex rel. Clausen v. Lab. Corp. of Am*erica,

290 F.3d 1301, 1311 (11th Cir. 2002) and *United States ex rel. Atkins v. McInteer*, 345 F. Supp.

2d 1302 (N.D. Ala. 2004) (internal quotation marks and citations omitted; emphasis added).  *See*

*United States ex rel. UBL v. IIF Data Solutions* 650 F.3d 445 (4th Cir. 2011); *United States v.*

*Riverside Healthcare Ass'n,* 2015 U.S. Dist. LEXIS 37134 (E.D.Va. 2015)*; and United States ex*

*rel. Rector v. Bon Secours Richmond Health Corp.  2014 U.S. Dist. LEXIS 52161* (E.D.Va.

2015).

The Eleventh Circuit illustrated differences between acceptably and unacceptably

pleaded FCA causes of action under Fed. R. Civ. P.  Rules 8(a) and 9(b).  It cited to *Clausen* as

an example of insufficient facts to support an FCA cause of action: despite details that identified

facilities, dates of testing and procedures, and "circumstances comprising the elements of the

alleged scheme to defraud," [the relator's] complaint 'failed to meet the minimum pleading

requirements for the actual presentment of any false claims.'" *McInteer,* 470 F.3d 1350, 1358, *citing Clausen*, 290 F.3d 1301, 1315.  The Court explained that no amounts of charges were identified, no actual dates were alleged, "no policies about billing or even second-hand information about billing practices were described," and not one copy of a single bill or payment was provided.  *Id*.

The Court cited to *Hill v. Morehouse Med. Assoc., Inc.*, 2003 U.S. App Lexis 27956 WL 22019936 as an example of a complaint that successfully stated a claim for relief under the FCA. *McInteer*, 470 F.3d at 1358.  Not only did the Relator have "firsthand knowledge" of the defendant's internal billing practices and "the manner in which the fraudulent billing schemes were implemented," she alleged she had observed the Defendants' billers, coders and physicians alter various CPT codes on claims which were then submitted to the government for reimbursement.  *Id*.

The complaint the Eleventh Circuit examined in *McInteer* failed for reasons similar to the failure of the complaint in *Clausen*:  the plaintiff cited particular dates, corresponding medical records for services that he contended were not eligible for government reimbursement, but failed to provide the next link in the "FCA liability chain":  showing that the defendants actually submitted reimbursement claims for the services allegedly provided.  *Id*. at 1359.  Instead the plaintiff only "summarily concludes that the defendants must have submitted false claims to the government for reimbursement.  *Id*.  Furthermore, the Eleventh Circuit noted that, when the plaintiff is the government, it should already possess the claims "false or otherwise" that the "potential defendant" submitted to the government for payment or approval and should be able to assess those claims and "evaluate any FCA liability that it believes should attach *before*" bringing suit. *Id*. at 1360, n.17.

Deviations from health-related standards, and rationale for prohibitions on reimbursement, also must be well-pleaded.   As observed by the court in ***United States ex rel. Gohil v. Sanofi-Aventis U.S., Inc.***, where a relator complained that defendants billed for prescriptions with knowledge they were ineligible for reimbursement, the Pennsylvania District Court granted a motion to dismiss because the allegation, as many in this case do, consisted of no more than a conclusory statements that

> would barely meet the plausibility standard of Rule 8(a), and it utterly fails to comport with the heightened pleading requirements of Rule 9(b).  Rule 9(b) demands to know specifically why the [claims] would not be eligible for reimbursement.

2015 U.S. Dist. LEXIS, 41312, at 33-38 (E.D.Pa. 2015).

With the Amended Complaint at issue before this Court, the Government fails to set forth the standards that would justifiably enable it to *presume* care not documented on a claim is care not rendered, or force it to conclude that a claim with no provider identified is care not rendered. Amended Complaint, Paragraphs 20, 24; ***Triple Canopy***, 775 F.3d at 640 ("Badr cannot state a claim by doing "nothing more than simply presum[ing]" that Triple Canopy submitted false claims…"); *quoting **United States ex rel. Badr v. Triple Canopy, Inc.***, 950 F.Supp. 2d 888, 2013 U.S. Dist. LEXIS 88423 (E.D.Va. 2013).

The Government scoffs at any suggestion "that the [Amended] Complaint must contain the definition of every CPT code" (Response, p. 13); however, general allegations that Defendants used the wrong billing code, without any other supporting, well pleaded facts, is not sufficient to meet the standards of Rule 9(b) as a representative example of fraud.  Similarly, and in addition to requiring pleading by the Government of "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation, Rule 9(b)'s particularity requirement mandates that any claim for payment represent an *objective falsehood*

6

to be actionable.  *United States ex rel. Badr v. Triple Canopy, Inc.*, 950 F. Supp. 2d at 894-896 (emphasis added); *quoted in **Triple Canopy***, 775 F.3d at 634.  This is important where in many instances the Government acknowledges that valuable services were rendered.

If the Government is capable of doing the math and calculating to the penny the amounts the Defendants allegedly owe as a result of the claim samples, the Government should have the ability to provide greater detail on alleged "unbundling" of services, and should specifically plead the services rendered, the specific billing or bundling standard, the deviation from it or the *objective falsehood*, the identity of the persons involved, and, thus, the cause of action.  *Id.*, See, Amended Complaint, Paragraph 23.

Each of the above deficiencies in detail occurs in the context of an Amended Complaint that is utterly devoid of any allegation of fact to support the requisite scienter.  The Government has not pleaded a fraudulent scheme, as it loudly concludes and proclaims.  Rather, it is seeking to "shoehorn what is, in essence, a breach of contract claim into a claim that is cognizable under the" FCA" *Triple Canopy*, 775 F.3d at 636; *quoting **United States ex rel. Wilson v. Kellogg Brown & Root, Inc.***, 525 F.3d 370, 373 (4th Cir. 2008)(other citations omitted).

The Government's Amended Complaint does not articulate any claim against the Defendants any better than the failed complaints analyzed in *McInteer* and should be dismissed. 470 F.3d 1350 (11th Cir. 2006).  The Government's Amended Complaint fails to meet the minimum pleading requirements for the actual presentment of any false claims.  The Government's Amended Complaint is based on an audit of patient records and do not does contain anything more than general, conclusory allegations that imply were somehow presented to and paid by "TRICARE."  In its Response, the Government asks this Court to infer, based on the Government's own conclusions, that the Defendants must have known that somehow,

sometime, somewhere that every "TRICARE" claim they sent to PGBA was ultimately

presented to the Government for payment or approval.  In the Amended Complaint, no amounts

of charges were ever identified, no actual dates of presentment were alleged, "no policies about

billing or even second-hand information about billing practices were described," and not one

copy of a single bill or claim for payment was ever described or attached to the Amended

Complaint.  *Id*. at 1358-1359.  Nothing in the Amended Complaint informs this Court or alerts

the Defendants to the "'precise misconduct with which they are charged.'"  *Id*. at 1359.

> **B.     The Amended Complaint does not Contain any Well-Pleaded Allegations
> that the Defendants Knew that the Allegedly False Claims they Submitted to
> the PGBA were False or Intended for them to be Presented to the
> Government for Payment or Approval.**

In its Response, The Government not only challenges the pleading standards the Supreme

Court confirmed in *Twomby* and *Iqbal*, it also questions the significance of ***Allison Engine Co.,***

***Inc. v. United States ex rel. Sanders***, 553 U.S. 662, 128 S.Ct. 2123, 170 L.Ed. 2d 1030 (2008),

and argues statutory changes in the wake of ***Allison Engine*** are irrelevant.  Response, p. 7, 9-10.

Courts across the country disagree.  ***Allison Engine*** states the law on pleading claims

pending prior to the effectiveness of FERA.  *See, e.g.,* ***United States ex rel. Willoughby v.***

***Collegiate Funding Servs.***, 2011, U.S. Dist LEXIS 3055, at *53-60 (E.D.Va. 2010); ***United***

***States ex rel. Winkler v. BAE Syst***ems, 957 F.Supp. 2d 856, 874-875 (E.D.Mich. 2013) (Motion

to Dismiss Granted); ***United States ex rel. Carpenter v. Abbott Labs, Inc.***, 723 F.Supp. 2d 395,

401 (D. Mass. 2010).

For purposes of scienter, ***Allison Engine*** imposes a specific intent requirement for false

statement claims under what is now 31 U.S.C. § 3729(a)(1)(B), and what was formerly referred

to as §3729(a)(2).  ***Abbot Labs***, 723 F.Supp. 2d at 401-402.   "In enacting FERA, Congress

amended the FCA to eliminate any suggestion that a violation of subsection (a)(2) required a

showing of specific intent." *Id.* FERA's less stringent "knowing" requirement is only applicable to all 3729(a)(2) claims pending on or after June 7, 2008. FERA, § 4(f)(1), 123 Stat. at 1625.

The Government's failure to allege claims-handling and presentment compounds an equally fundamental failure to allege any facts whatsoever in support of its conclusion that "the Defendants" intended to defraud the federal government, knew of false claims or acted in reckless disregard of their truth or falsity. The failure to plead any facts in support of knowledge or intent, and the government's professed lack of ability to add such facts, is fatal to all fraud-based claims, statutory and at common law.

*Allison Engine* explained that the "knowing" or "knowingly" requirement found in 31 U.S.C. § 3729(b), applicable to all FCA causes of action under both prior law and current law, dealt with the truth or falsity of information. *Allison Engine*, 553 U.S. at 672, n. 2. Section 3729(b) of the FCA requires the plaintiff to plead facts to indicate that a person (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information. *Id.* at 672, n. 2.

The Amended Complaint does not allege facts that, if proven, would establish this element of the Government's claim. As discussed in ***United States ex rel. Decesare v. American in Home Nursing***, 757 F.Supp. 2d 573, 583 (E.D.Va. 2010):

> Federal Rule of Civil Procedure 9(b) explains that "malice, intent, *knowledge*, and other condition[s] of mind" may be alleged generally. (emphasis supplied). "It is true that Rule 9(b) requires particularity when pleading fraud or mistake, while allowing … knowledge … [to] be alleged generally." *Iqbal*, 129 S. Ct. 1954 (internal quotation marks omitted). "But 'generally' is a relative term." *Id.* "In the context of Rule 9, it is to be compared to the particularity requirement applicable to fraud or mistake." *Id.* Rule 9 merely excuses a party from pleading

[states of mind] under an *elevated pleading* standard.  It does not give him license to evade the less rigid-though still operative-strictures of Rule 8." *Id.*  (emphasis supplied).

That means the Relator must give sufficient factual support for knowledge to satisfy Rule 9(b).  And here, the Amended Complaint is lacking.  For each count, it does state that "defendants knowingly" made false statements.  [Internal citations omitted.]  But nowhere else does the Amended Complaint present *facts* showing Medstar's *knowledge* that its certifications falsely reported the absence of kickbacks.

757 F.Supp. 2d 573 (E.D.Va. 2010)(Motion to Dismiss granted)(emphasis supplied).

Not only does the Amended Complaint not meet the "knowing" standard applicable to all actions brought under the FCA, it also does not meet the second, specific intent requirement applicable to suits brought under subsection (a)(2) prior to the amendments to the FCA.  *See Abbott Labs, Inc.*, 723 F.Supp. 2d at 401-402; c*iting Allison Engine*, 128 S.Ct. at 2128.  The Court in *Abbott Labs* dismissed the (a)(2) claim because the Plaintiff in *Abbott Labs*, much as the Government does here, assumed *Allison Engine* did not affect its claims and pleaded only "knowing" acts by the defendants.  *Id.*, See Response, p. 7, 17-18.

The Supreme Court confirmed in *Allison Engine* that, to state or establish a claim for relief under the FCA, a claimant must plead and ultimately prove facts that show the defendant's specific intent that a claim be paid by the Government and not by another entity.  *Allison Engine*, 553 U.S. at 670.  The Amended Complaint is devoid of any specific allegations that support the plausible conclusion that Dr. Satterwhite ever intended to defraud the federal government.  In the Response, the Government, after several years of investigation, acknowledges that it is "at a loss" how to respond to the Defendants' identification of deficiencies in its pleading of scienter, pointing only to its repeated conclusory allegations and its repeated formulaic recitation of the words "knowingly" in the Amended Complaint.  Response,

p. 17.  By admission of the Government, permission to amend would be futile.  See *Nathan*, 707 F.3d at 461.  In addition, the Government cannot in good faith amend the false record component of the Amended Complaint to allege that the provider intended that the federal government pay its claim, as required under *Allison Engine*, 553 U.S. at 670.

The starting point for ascertaining the intent of the parties to a contract is the language of the contract.  *Lion Assocs., LLC v. Swiftships Shipbuilders, LLC*, 475 Fed. Appx.  496, 501 (4th Cir. 2012).  The Provider Contract between Health Net and GSI ("HGA") appended as Exhibit A to the Motion to Dismiss includes no reference to forwarding of TRICARE claims to the Government.  Rather, under the terms of the HGA, the provider submits all claims to the MCSC, the MCSC pays the provider, and the billing and claims review process is dictated and executed by the MCSC.  Provider Agreement, § § 2.16; 3.1; 4.1.  The MCSC explicitly retains the right to review and modify the claims, the accuracy of coding, and any compensation payable to the provider based on any modifications the MCSC makes.  *Id.*

By reference to Exhibit 1 to the Response, the Government admits and perhaps alleges that the parties to the HGA acted in accordance with their agreement.[1]  After investigation or validation of a submitted claim form, Health Net, through its subcontractor, paid the provider from its own funds and prepared and submitted to "TRICARE" a separate claim including additional information supplied by the MCSC and not supplied by any defendant.  See Response, Exhibit 1.

> [G]etting a false or fraudulent claim "paid…by the Government" is not the same as getting a false or fraudulent claim paid using "government funds. . . . Under [pre-FERA] §3729(a)(2), a defendant must intend that the Government itself pay the claim.

---

[1] The validity or source of Exhibit 1 is not explained in the Government's Response and Defendants reserve all rights to object to its admissibility.

*Allison Engine*, 553 S.Ct. at 669 (emphasis added).[2]

### C. The Amended Complaint does not Contain any Well-Pleaded Allegations that the Defendants had Devised a Scheme to Overcharge the Government.

The Government's allegations in the Amended Complaint assign liability for all claims to "the Defendants." As a result, neither the Court, GSI nor Dr. Satterwhite can gauge the knowledge or participation of the individual defendant and are not put on notice of who, in fact, engaged in the alleged fraud. See, e.g., ***United States v. Universal Health Servs***., 2010 U.S. Dist. LEXIS 116432, at *5-7 (W.D.Va. 2010) (initial grouping defendants was insufficient to plead an FCA violation, and revised allegations must connect individually named defendants "to an active role in the preparation of these false claims and reports."); *see also **DeCesare***, 757 F.Supp. 2d 588-590 (the filing of false claims must be the foreseeable result of the defendant's pleaded actions).

> Under § 3729(a)(1)'s requirement that a person "cause" a false claim to be presented, the appropriate focus of the inquiry in on "the specific conduct of the person from whom the Government seeks to collect."

***United States ex rel. Sikkenga v. Regence Bluecross Blueshield***, 472 F.3d 702, 714 (10th Cir. 2006); *quoting **United States v. Bornstein***, 423 U.S. 303, 313, 96 S.Ct. 523, 46 L.Ed. 2d 514 (1976); *see also **Feeley v. Total Realty Mgmt.,*** 660 F.Supp.2d 700, 712 (E.D.Va. 2009) (dismissing complaint against "Bank Defendants"); *quoted in **MSSI Acquisition, LLC v. Azmat***

---

[2] The Government's case for overbilling, without scienter, demonstrates why the FCA's scienter requirement should be strictly enforced. See *United States ex rel. Landis v. Tailwind Sports*, 51 F.Supp. 3d 9, 51 (D.D.C. 2014); citing *United States v. Science Applications Int'l Corp*., 626 F.3d 1257, 1266, 1271, 393 U.S.App. D.C. 223 (D.C.Cir. 2010)("[S]trict enforcement of the FCA's scienter requirement will also help ensure that ordinary breaches of contract are not converted into FCA liability.").

*Consulting, Inc.*, 2012 U.S. Dist. LEXIS 117745, at *20-21 (E.D.Va. 2012) ("Plaintiff's Complaint merely alleges that "Defendants" or 'Azmat and Azmat Consulting' did certain things, rather than specifically setting forth who did what...").

The only alleged acts attributable to the individual defendant Satterwhite are her ownership of her co-defendant GSI, her practice of medicine, and her obtaining a TRICARE provider number. See, e.g., Amended Complaint Paragraph 6-9, 19, 20. None of these meager allegations indicates knowing or intentional, active involvement in fraud, or that a false claim would be the foreseeable result of the pleaded acts.

> **D.     The Amended Complaint does not Contain any Well-Pleaded Allegations that the Defendants were Unjustly Enriched.**

To recover in quasi-contract for unjust enrichment, the Government must establish three elements: (1) it conferred a benefit on the Defendants; (2) knowledge on the part of the Defendants that the Government conferred the benefit; and (3) acceptance or retention of the benefits by the Defendants in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value. *Tao of Systems Integration v. Analytical Services*, 299 F.Supp. 2d 565 (E.D.Va. 2004).

As argued in the Motion, the Government failed to allege it conferred a benefit upon any defendant because it did not pay the provider, Health Net did. It argued in the Response that "Unjust Enrichment, like Common Law Fraud, is not dependent on contract" and its "unjust enrichment claim is dependent on the reliance of the injured party on the false representations." Response at 20. While privity of contract is not required to recover on a quasi-contract theory, the Government fails to allege the rare factual scenario where a plaintiff may recover for unjust enrichment for funds paid by a third party:

> Where the defendant has received money from a third person by
> law or authority through some mistake or fraud, which but for the
> mistake or fraud would have vested the right to the money in the
> plaintiff, … the plaintiff may recover whenever but for the mistake
> or fraud, he would have had an ***unquestioned right to the money***.
> Such cases rest on the plaintiff's ***original right*** to the money.

*John C. Holland Enterprises, Inc. v. J.P. Mascaro & Sons, Inc.*, 653 F.Supp. 1242, at 1246-1247 (E.D.Va. 1987) (Doumar, J.)(emphasis added); *quoting Norfolk v. Norfolk County*, 120 Va. 356, 375-376 (Va. 1917).  In *Norfolk v. Norfolk County*, the tax funds at issue "of right belonged to the city at the time they were assessed and at the time they were paid [to the county, in error]." 120 Va. at 372.  The Virginia Supreme Court in *Norfolk County* found it significant that the city had no other remedy than to sue the county, since the taxpayers had discharged their obligation to pay the taxes. *Id.*

The Amended Complaint includes no facts to suggest the Government has any right, much less an original and unquestioned right, to the funds Health Net holds and pays to GSI. Nor does the Amended Complaint state facts to suggest the Government has no remedy against Health Net.  The Amended Complaint fails to include any facts related to rights in funds held by Health Het and no reference to its rights against its contractor, Health Net.  See Amended Complaint, Paragraph 9.

If the Court determines the Government has sufficiently pleaded unjust enrichment as to GSI, the Government has still failed to please a benefit conferred upon, and thus a right to recover from Dr. Satterwhite, an individual.  The Amended Complaint and the Provider Agreement, Exhibit A to the Motion, make clear that the recipient of payment from Health Net is

the corporate defendant.    A corporation "is an entity separate and apart from its officers and shareholders." *Terry v. Yancey*, 344 F.2d 789, 790 (4th Cir. 1965).  The Amended Complaint has failed to allege facts to indicate Dr. Satterwhite used the corporation to perpetrate a fraud. *See*, *SEC v. Woolf*, 835 F.Supp. 2d 111, 124-125 (E.D.Va. 2011)(citations omitted).

The Amended Complaint clearly lacks the plain statement possessing "enough heft" to show pursuant to Rule 8 that the Government is entitled to relief from either defendant on a theory of unjust enrichment. *Twombly*, 550 U.S. at 557, 570.  For this reason, the Court should dismiss Count VII.

## II.    Facts The Government did Plead in the Amended Complaint are Sufficient to Establish that the Government's Claims are Time Barred.

In its defense of the late filing in violation of the statute of limitation, the Government argues that it relies not on the six year limitation on filing suit, tacitly acknowledging that that limitation has passed. Instead of the six year limitation, the government attempts to enlarge its time limit to commence suit, claiming that it "is relying on §3731(b)(2)."  That section gives the Government "3 years [from] the date when material facts became known or reasonably should have been known, by the official of the United States charged with responsibility to act in the circumstances . . . ."  The Government argues that "the United States Attorney General and specifically in this case, and by delegation, the United States Attorney for the Eastern District of Virginia" is that official and that he did not know about the potential False Claims Act claim or other causes of action against the Defendants, until he received a letter and report from a Department of Defense investigative agency on July 27, 2011, which it claims it will produce in redacted form or *in camera,* if necessary. Response at 24.

The government misses the point of the section on which it claims to rely.  "Statutes of limitations, [  ]found and approved in all systems of enlightened jurisprudence represent a

pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend

within a specified period of time and that the right to be free of stale claims in time comes to

prevail over the right to prosecute them." *United States v. Kubrick,* 444 U.S. 111, 117 (1979)

(internal quotations and citations omitted).   In its brief, the Government has focused on who is

"the official of the United States charged with responsibility to act . . . ." Response at 23-24.  In

conformity with the legislative judgment as to how long is too long, the language the

Government should address is when it "reasonably should have known" the material facts upon

which it relies in this prosecution.  It is fairly easy to determine when the facts upon which the

Government relies became known because it relies solely on an audit report completed, upon

information and belief, in or around May 2009.[3]  *See* Amended Complaint, Paragraph 17.


In cases such as this, in determining when the statute of limitations has commenced to

run, Courts have relied on the "discovery-due diligence" standard.  Under this standard, "courts

have consistently found that a limitations period begins to run under the 'should have known'

standard at the point in time that the government official charged with bringing the civil action

'discovers, or by reasonable diligence could have discovered, the basis of the lawsuit.'" *U.S. ex*

*rel. Miller v. Bill Harbert International Construction, Inc.*, 505 F.Supp.2d 1 (D.C. Cir. 2007)

(internal citations omitted).

> In cases where defendants have not engaged in affirmative acts of fraudulent
> concealment, a plaintiff is deemed to have sufficient notice of critical facts to set
> the statute of limitations running if the plaintiff has inquiry notice of the injury

---

[3] The Government seems to take pride in the fact that its allegations are so vague as to time and dates that the court cannot possibly rule on the statute of limitations.  For instance, on page 27 of its Response, the Government states: "There are insufficient facts alleged in the Complaint, or offered by affidavit or otherwise in the Defendants' Motion to allow the Court to arrive at an answer [regarding the statute of limitations issues] with any degree of certainty, at this point."

and its cause. *Cf. Kubrick,* 444 U.S. at 120, 100 S.Ct. 352; *Cf. Sprint,* 76 F.3d at 1228 (citing *Riddell,* 866 F.2d at 1491). In such a case, a plaintiff "may not wait passively until evidence of actual injury surfaces." *Loughlin,* 230 F.Supp.2d at 40. Rather, a plaintiff *must,* within the statutory period, "make a diligent inquiry into the facts and circumstances that would support that claim," so as to determine whether and whom to sue. *Sprint,* 76 F.3d at 1228; *cf. Kubrick,* 444 U.S. at 122, 100 S.Ct. 352; *Davis v. United States,* 642 F.2d 328, 331 (9th Cir.1981) (citing *Kubrick,* 444 U.S. 111, 100 S.Ct. 352 (1979)). Where no fraudulent concealment exists, a plaintiff's failure to exercise due diligence in discovering the material facts underlying the cause of action is fatal to those claims. *See Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984).

*Id*. at 8.  There has been no allegation that Dr. Satterwhite fraudulently concealed any facts upon which the Government has relied in bringing this action.  In fact, Dr. Satterwhite has freely submitted all records to the audit upon which the Government relies.  Moreover, the Defendants are not asking the court to consider the time of submission of the records to the audit to be considered "the first date that the [Government] possesses sufficient critical facts to put [it] on notice that a wrong has been committed and that [it] need investigate to determine whether he is entitled to redress." *Loughlin v. United States*, 230 F.Supp.2d 26, 40 (D.D.C. 2002).  However, as is apparent from the few facts the Government did allege in the Amended Complaint, once the audit was completed, the Government had all the facts it believed it needed to commence its action against the Defendants.  The date the audit report was completed should be the first date commencing the three year time clock.  The audit was completed more than years before any actions by the government to either toll the statute of limitations or prosecute the action.

In a case under the FCA, factually similar to the one presently before the court, the plaintiff alleged that defendants presented invoices for payment to the Government that they knew or should have known were false, the United States District Court for the District of Columbia found that "regardless of whether the DOJ is the responsible party charged with

uncovering the fraud, the court determines that DOJ knew or should have known of material facts giving rise to the plaintiff's cause of action at the time when the DCA audit was released…." *United States v. Intrados/International Management Group,* 265 F.Supp. 2d 1 (2002); *see also United States ex rel. Frascella v. Oracle Corp.*, 751 F.Supp. 2d 842, 851 (E.D.Va. 2010) ("[T]he statute of limitations quite obviously began to run at the time of the 1998 audit.").

In *Intrados*, , the Government offered the same argument as it does here; that is, that "the responsible government official charged with the responsibility to act on behalf of the government, was not aware of the facts surrounding this case until" about nine months  after the completion of an audit upon which the government relied in prosecuting its case.  265 F.Supp. 2d *at* 10. The court disagreed with the Government in that case.  Finding that the statute of limitations began to run on the audit's release date, the court dismissed causes of action filed three years and three months later.   *Id.* at 12.  The court found that the Government did not exercise due diligence in uncovering the alleged fraud.  *Id.*  In the case at bar, the Government alleges that it did not know the facts on which it relies in the case until over two years after the release of the audit.  This Court should not allow the Government's lack of due diligence to extend the time beyond that which legislative judgment had determined was fair. In this case, all facts upon which the Government relies were known or should have been known over three years before any tolling agreement took effect or the Government filed this action. All claims asserted by the Government under the False Claims Act should be dismissed as violative of the statute of limitations.

Based on the Government's argument that the statute of limitations for Count III, Common Law Fraud, is three years and that a tolling provision applies to prevent the

commencement of the three year time clock until "an official of the United States" reasonably could have known of the material facts, the same argument and the same responsibility for the Government to exercise due diligence applies to Count III.  The same audit report upon which the Government relies was completed and released more than three and a half years before any tolling agreement between the parties and over six years before the filing of an action by the Government.  The statute of limitations for the Fraud counts raised by the Government has run and these actions should likewise be dismissed.   The District Court for the District of Columbia adopted this approach in *Intrados* and dismissed the plaintiff's cause of action for common law fraud.  265 F.Supp. 2d at 14.

## CONCLUSION

By its own admissions, the Government's claims for fraud were "revealed via" the audit that was concluded by mid-2009, and it has had since at least July 27, 2011, to state its case against the Defendants.  Amended Complaint ¶ 17, Response at 23.  After years of investigation, two full opportunities to plead its case, and patent prejudice to the sole practitioner defendant, Dr.  Satterwhite, the Government cannot get the statutory reference right, cannot satisfy the pleading requirements under the Federal Rules, and admits that it is "at a loss" to know how it can amend its complaint again.  Despite its repeated requests to amend its complaint again due to the deficiencies of the Amended Complaint, such amendments would be futile. Although leave to amend should be freely given when justice requires, justice demands in this case that the Government's Amended Complaint be dismissed with prejudice.

Defendants, Dr. Cynthia K. Satterwhite and Gastroenterology Specialists, Inc., respectfully request this Court to dismiss in its entirety the Amended Complaint of the United States of America.

Dated:  August 19, 2015                                    Respectfully submitted,

   /s/ *Ann B. Brogan*
Ann B. Brogan, VSB No. 25567
abrogan@clrbfirm.com
John M. Ryan, Jr., VSB No. 37796
jryan@clrbfirm.com
CROWLEY, LIBERATORE, RYAN & BROGAN, P.C.
Town Point Center, Suite 300
150 Boush Street
Norfolk, Virginia 23510
(757) 333-4500
(757) 333-4501 (fax)
*Counsel for Defendants, Cynthia K. Satterwhite
and Gastroenterology Specialists, Inc.*

<u>CERTIFICATE OF SERVICE</u>

       I certify that on July 14, 2015, a true copy of the foregoing Motion to Dismiss has been electronically filed with the Clerk of Court using the CM/ECF system, which will send electronic notice of and serve such filing to those parties who are currently listed on the Electronic Mail Notice List for this Case to the following:

       George M. Kelley , III, george.kelley@usdoj.gov, usavae.nor.ecf.civil@usdoj.gov
       Assistant United States Attorney
       United States Attorney's Office
       101 West Main Street, Suite 8000
       Norfolk, VA 23501

       *Counsel for Plaintiff, United States of America*

         /s/ *Ann B. Brogan*
       Ann B. Brogan, VSB No. 25567
       abrogan@clrbfirm.com
       John M. Ryan, Jr., VSB No. 37796
       jryan@clrbfirm.com
       CROWLEY, LIBERATORE, RYAN & BROGAN, P.C.
       Town Point Center, Suite 300
       150 Boush Street
       Norfolk, Virginia 23510
       (757) 333-4500
       (757) 333-4501 (fax)
       *Counsel for Defendants, Cynthia K. Satterwhite*
       *and Gastroenterology Specialists, Inc.*