

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                                        CIVIL NO. 2:15CV111

CYNTHIA K. SATTERWHITE AND
GASTROENTEROLOGY
SPECIALISTS, INC.,

    Defendants.

## ORDER

This matter comes before the Court on a Motion for Summary Judgment filed by Defendants Cynthia K. Satterwhite ("Dr. Satterwhite") and Gastroenterology Specialists, Inc. ("GSI") (collectively "Defendants"). ECF No. 27. The United States of America ("Plaintiff" or "the Government") brings four counts against Defendants for allegedly overbilling the health benefit program TRICARE for medical services that Dr. Satterwhite provided to TRICARE beneficiaries. Defendants contend they are entitled to summary judgment because: (1) the relevant statutes of limitations bar the Government's claims arising under the False Claims Act ("FCA") and common law fraud; and (2) the Government's equitable claim of unjust enrichment is not properly before the Court because the Government has a remedy available at law. For the reasons set forth herein, Defendants' Motion for Summary Judgment, ECF No. 27, is **GRANTED IN PART AND DENIED IN PART.**

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

    A.  F<small>ACTS AS</small> A<small>LLEGED BY THE</small> P<small>ARTIES</small>

The United States Government, through congressionally appropriated funds for the

Department of Defense ("DOD"), provides a cost-sharing program for medical care through the TRICARE (formerly CHAMPUS) program. First Am. Compl., ECF No. 3, at ¶ 5; Answer, ECF No. 23, at ¶ 5. The beneficiaries of the TRICARE program include current and select retired uniformed services personnel and their dependents. *Id.* Under certain circumstances, TRICARE-authorized civilian health care providers may provide and be paid for medical services they render to TRICARE-eligible beneficiaries. First Am. Compl., ECF No. 3, at ¶ 5. TRICARE typically processes and pays for services rendered by civilian health care providers through Managed Care Support Contractors. *Id.* at ¶ 9, *see also* Def. Mot. Summ. J., ECF No. 27, at 4. Health Net Federal Services, Inc. ("Health Net") is the relevant Managed Care Support Contractor for this action. Def. Ex. 1, ECF No. 26-2; Pl.'s Resp., ECF No. 31-4, at Ex. 4. Health Net entered into a Managed Care Support contract with the DOD that became effective on September 1, 2003. Def. Ex. 1, ECF No. 26-2; Pl.'s Resp., ECF No. 32-4, at Ex. 4. Subsequently, Health Net entered into a Provider Contract with GSI that became effective on April 1, 2006. Pl.'s Resp., ECF No. 31-4, at Ex. 4; Def. Mt. Dismiss, ECF No. 5, at Ex. A. As a result of entering into the Provider Contract, GSI became a TRICARE-authorized civilian health care provider.[1]

At some point thereafter, likely in May 2008, Defendants were identified for review by Health Net's Program Integrity Unit and a Program Integrity Case was opened against them. Defs.' Mt. Summ. J., ECF No. 27, at 5; Pl.'s Resp., ECF No. 31, at 5-6. A random sample audit was subsequently conducted of sixty-eight (68) patient files randomly selected from the 6023 claims the Defendants submitted to Health Net, through Health Net's private claims processing subcontractor PGBA, LLC, for payment for medical services rendered to TRICARE-eligible

---

[1] At all relevant periods, GSI was a Virginia corporation that provided medical care services and Dr. Satterwhite was its sole officer, director, and shareholder. First Am. Compl., ECF No. 3, at ¶¶ 6-7; Answer, ECF No. 23, at ¶¶ 6-7.

patients between January 1, 2005 and June 30, 2008. First Am. Compl., ECF No. 3, at ¶¶ 13-17; Answer, ECF No. 23, at ¶¶ 13-17. As a result of the audit's findings, Joe O'Brien, Jr. ("Mr. O'Brien"), a Healthcare Fraud Specialist with the DOD's TRICARE Program Integrity Office, made a case referral by letter memorandum to the Arlington, Virginia Regional Office of the Defense Criminal Investigative Service ("DCIS") for Defendants' alleged TRICARE fraud. Defs.' Mt. Summ. J., ECF No. 27, at 5, Ex. 5; Pl.'s Resp., ECF No. 31, at 5-6. Mr. Obrien's letter memorandum was dated July 23, 2009 and was received by the DCIS Regional Office on July 27, 2009. *Id.* Similarly, by letter dated July 23, 2009, Mr. O'Brien notified the acting United States Attorney for the Eastern District of Virginia of Defendants' allegedly fraudulent activities and the case referral to DCIS.[2] *Id.* After a period of nearly four years the parties, beginning on February 26, 2013, entered into a series of tolling agreements that exclude the period from March 1, 2013 until noon on March 18, 2015 from the applicable statute of limitations. Defs.' Mt. Summ. J., ECF No. 27, at 5, Ex. 5; Pl.'s Resp., ECF No. 31, at 7-8.

### B. PROCEDURAL HISTORY

On March 18, 2015, the Government filed its initial Complaint. ECF No. 1. On June 23, 2015, the Government filed a First Amended Complaint. ECF No. 3. As detailed in the Court's previous Order, ECF No. 12, and repeated herein, the Government brings four claims against Defendants for allegedly executing a fraudulent scheme to overbill the TRICARE program by submitting or causing to be submitted false and fraudulent claims to TRICARE through its intermediary, Health Net. The Government alleges Defendants accomplished this through

---

[2] The Government indicates that the produced letter is a stored draft found in the TRICARE computer system and that no original or copy of the letter could be found in any of the offices for the United States Attorney for the Eastern District of Virginia. However, the Government "stipulates that the original letter was received at the Norfolk or Newport News office of the United States Attorney" and that "July 23, 2009 is the date when, for purposes of 31 U.S.C. § 3731(b)(2), pertinent information" became known to the relevant United States official. Pl.'s Resp. ECF No. 31, at 7.

3

submitting six types of fraudulent claims, including: (1) claims with medical care codes (CPT codes), which reflect a higher level of care, greater complexity of care, and/or greater time consumed in rendering care than was actually rendered by Dr. Satterwhite; (2) claims with medical care codes that were insufficiently documented and therefore presumed to have never been performed by Dr. Satterwhite; (3) claims which asserted that medical services were rendered by physicians when in fact the services were rendered by a physician's assistant or nurse practitioner; (4) claims combining elements found in both of the previously described first and third examples of fraudulent claims; (5) claims which contained separate charges for various aspects of treatment that were in fact all part of the same treatment and should have been submitted as a single charge; and (6) claims which failed to identify the provider of the medical treatment rendered, leaving the Government to presume the treatment was not rendered by a medical professional entitled to reimbursement. *See* First Am. Compl., ECF No. 3, at ¶¶ 16-25. As a result of the alleged submission of false claims, the Government brings the following four counts against Defendants: (1) Count One, Making a False Claim in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1);[3] (2) Count 2, Making or Using a False or Fraudulent Record in violation of the False Claims Act, 31 U.S.C. § 3729(a)(2); (3) Count 3, Common Law Fraud; and (4) Count Four, Unjust Enrichment.

On July 14, 2015, Defendants filed a Motion to Dismiss the claims asserted against them. ECF No. 5. After the Motion to Dismiss was fully briefed and a hearing was conducted, the Court denied Defendants' Motion to Dismiss without prejudice. Order, ECF No. 12, at 1. In addition to dismissing Defendants' motion, the Court allowed Defendants to file limited discovery requests regarding details of the audit and the subsequent dissemination of its findings

---

[3] Because the alleged violations of the False Claims Act at issue occurred between January 1, 2005 and June 30, 2008, the version of the statute in effect during that time period provides the applicable language governing this action.

to certain members of the United States attorneys and others. Order, ECF No. 12, at 1. The Court also provided Defendants with one hundred twenty (120) days to file an Answer. *Id.* After discovery concluded and Defendants' filed their Answer, the Defendants moved for Summary Judgment on March 15, 2016. *See* Defs.' Mt. Summ. J., ECF No. 27; Defs.' Mt. to Seal, ECF No. 26. The Government filed its response in opposition to the motion on March 29, 2016, ECF No. 31, to which Defendants replied on April 4, 2016. The Court held a hearing on the matter on April 12, 2016, at which both parties made an appearance. During the hearing, the Court provided the parties an additional seven (7) days to file limited supplemental briefing. The period for supplemental briefing has concluded and Defendants' Motion for Summary Judgment is ripe for decision.

## II. LEGAL STANDARD

Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. A party is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In consideration of a motion for summary judgment, a court must view the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). Summary judgment will "be granted unless 'a reasonable jury could return a verdict for the nonmoving party' on the evidence presented." *Kelley v. United Parcel Service, Inc.*, 2013 WL 2480211, at *1 (4th Cir. June 11, 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Conclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of [the nonmoving party's] case." *Id.* (quoting *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002)). Moreover, "[t]he mere existence of some alleged factual dispute between the parties will

not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Roche v. Lincoln Property Co.*, 2003 WL 22002716 (E.D. Va. July 25, 2003).

## III. ANALYSIS

### A. FALSE CLAIMS ACT

Defendants contend that the Government's claims arising under the False Claims Act are time-barred by the relevant statute of limitations. The False Claims Act provides in relevant part:

> (b) A civil action under section 3730 may not be brought—
>
> (1) more than 6 years after the date on which the violation of section 3729 is committed, or
>
> (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,
>
> whichever occurs last.

31 U.S.C. § 3731.

In this case, the alleged violations of the FCA occurred between January 1, 2005 and June 30, 2008. The Government stipulates that it was made aware of the material facts relating to these alleged violations in the letter sent by Mr. O'Brien to the acting United States Attorney for the Eastern District of Virginia on July 23, 2009. The parties subsequently entered into a series of uninterrupted tolling agreements that exclude the period of time from March 1, 2013 until noon on March 18, 2015. Because the Government filed this action on March 18, 2015, the de facto filing date in this case is March 1, 2013.

These facts establish that § 3731(b)(1) provides the limitation period "which occurs last" for

the Government's FCA claims. 31 U.S.C. § 3731(b). Counting backwards six years from March 1, 2013 yields a date of March 1, 2007. Accordingly, § 3731(b)(1) bars the Government's FCA claims for all alleged false statements submitted before March 1, 2007. Therefore, the Government may only proceed with its FCA claims for alleged false claims submitted by Defendants between March 1, 2007 and June 30, 2008.

Although 31 U.S.C. § 3731(b)(1) identifies the appropriate limitation period for this action, Defendants urge the Court to employ the doctrine of judicial estoppel to bar the Government from relying on the six year limitation period set forth therein. Instead, Defendants argue the Government should be required to rely on the three year limitation period described in § 3731(b)(2) because: (1) the Government failed "to provide a valid explanation why it did not become aware of the 2009 Referral Letter until long after it should have made 'reasonable inquiry' of the TMA/DOD and other Government Actors pursuant to Fed. R. Civ. P. Rule 11" and (2) the Government indicated at the Motion to Dismiss stage that it was relying on the three year rather than the six year statute of limitations period. Defs.' Reply, ECF No. 32, at 4-9.

The Court finds no compelling reason to grant Defendants' request. Judicial estoppel is uniformly recognized as a tool to protect the integrity of the judicial process and prevent parties "from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227, n. 8 (2000)). Although the circumstances under which judicial estoppel may be appropriately applied may not be reducible to any general formulation, the Supreme Court of the United States has noted that the following three factors may inform a court's decision whether to apply the doctrine: (1) whether a party takes a later position that is clearly inconsistent with its earlier position; (2) whether the party persuaded the

court to accept that party's earlier position, "so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that . . . [the] court was misled"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* (internal quotations and citations omitted). Consideration of these factors directs the Court in favor of denying Defendants' request for judicial estoppel. Most notably, the Government's position regarding the applicable statute of limitations was not relied upon or accepted by the Court at the Motion to Dismiss stage. As indicated in the Court's Order filed on November 17, 2015 denying Defendants' Motion to Dismiss, the Court held that generally "[a]ffrimative 'defenses are more properly reserved for consideration on a motion for summary judgment" and "the Court believes the proper time to address these defenses will likely be during motions for summary judgment after discovery." Order, ECF No. 12, at 13 (quoting *Richmond, Fredericksburg & Potomac R.R. Co v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993). In addition, the Court found during the hearing on Defendants' Motion for Summary Judgment that Defendants had not been prejudiced by the Government's position and therefore the Government will not derive an unfair advantage if not estopped.

For these reasons, Defendants' Motion for Summary Judgement is **GRANTED** as to the Government's FCA claims against allegedly false claims submitted by Defendants before March 1, 2007. Defendants' Motion for Summary Judgment as to the Government's FCA claims arising from allegedly false claims submitted between March 1, 2007 and June 30, 2008 is **DENIED**.

### B. COMMON LAW FRAUD

Defendants contend, and the Government concedes, that all claims arising under common

law fraud are time barred by the limitations set forth in 28 U.S.C. §§ 2415(b) and 2416. In pertinent part, 28 U.S.C. § 2415(b) reads:

> Subject to the provisions of Section 2416 of this title, and except as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon a tort shall be barred unless the complaint is filed within three years after the right of action first accrues.

In addition, 28 U.S.C. § 2416(c) excludes periods during which "facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with the responsibility to act in the circumstances."

The undisputed facts clearly demonstrate that the Government failed to file its Complaint within three years from the accrual of its rights or three years from when it was first informed of the facts material to this proceeding by letter on July 23, 2009. Any arguable cause of action for common law fraud is barred by the statute of limitations and therefore Defendants' Motion for Summary Judgment is **GRANTED** as to the Government's claim of common law fraud. As a result, Count III, Common Law Fraud, is **DISMISSED**.

### C. UNJUST ENRICHMENT

Lastly, Defendants contend that the Court does not have equitable jurisdiction over the Government's claim for unjust enrichment because the Government has a remedy at law already available. In support of this contention, Defendants argue that: (1) Congress's enactment of the False Claims Act is a comprehensive enforcement scheme that bars federal courts from establishing a common law rule of relief under these circumstances; and (2) the contract between the Government and Health Net provides a remedy at law in the event the Government overpays for medical services through its reimbursement process.

Defendants' first argument is unavailing. Courts routinely allow the Government and private

parties to plead claims of unjust enrichment in the alternative to claims brought under the FCA. *See U.S. ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 372 (4th Cir. 2015) (noting that "the government intervened . . . and filed additional claims seeking equitable relief for payments under . . . unjust enrichment theories."); *U.S. v. American Heart Research Foundation, Inc.*, 996 F.2d 7 (1st Cir. 1993) (referring to unjust enrichment claims as "the government's alternative remedy"); *U.S. ex rel. Badr v. Triple Canopy, Inc.*, 950 F. Supp. 2d 888, 904-05 (E.D. Va. 2013), *aff'd in part, rev'd in part sub nom. United States v. Triple Canopy, Inc.*, 775 F.3d 628 (4th Cir. 2015); *United States v. Jurik*, 943 F. Supp. 2d 602, 612-13 (E.D.N.C. 2013); *United States v. Fadul*, 2013 WL 781614, at *7 (D. Md. Feb. 28, 2013); *United States v. Kernan Hosp.*, 880 F. Supp. 2d 676, 684 (D. Md. 2012); *U.S. ex rel. Westrick v. Second Chance Body Armor, Inc.*, 685 F. Supp. 2d 129 (D.D.C. 2010); *United States v. Unified Indus., Inc.*, 929 F. Supp. 947, 951 (E.D. Va. 1996) (finding federal jurisdiction for unjust enrichment claims under 28 U.S.C. § 1367(a) as "the government's unjust enrichment . . . claims plainly fall within the scope of § 1367(a), for these claims form part of the same case or controversy as the government's FCA claims.").

Defendants' second argument, however, presents a more difficult question. It is well settled that "[w]here a contract governs the relationship of the parties, the equitable remedy of restitution grounded in quasi contract or unjust enrichment does not lie." *WRH Mortg., Inc. v. S.A.S. Associates*, 214 F.3d 528, 534 (4th Cir. 2000); *see also Acorn Structures, Inc. v. Swantz*, 846 F.2d 923, 926 (4th Cir. 1988) ("An action for unjust enrichment is quasi-contractual in nature and may not be brought in the face of an express contract."); *Butts v. Weltman, Weinberg & Reis Co., LPA*, 2013 WL 6039040, at *3 (E.D. Va. Nov. 14, 2014) ("A condition precedent to the assertion of such a claim is that no express contract exists between the parties. Logic dictates that an express contract defining the rights of the parties necessarily precludes the existence of an

implied contract of a different nature containing the same subject matter.") (internal quotations and citations omitted). However, this principle is not squarely applicable to the instant action as there is no express contract between the Government and Defendants. Instead, the question presented here is whether common law bars an unjust enrichment claim when the Plaintiff is a party to a contract but the Defendants are not. This issue is less settled and the Court borrows relevant principles and analysis found in Virginia law to clarify and resolve this question. *See Butts*, 2013 WL 6039040 at \*3-5; *Datastaff Technology Group, Inc. v. Centex Const. Co., Inc.*, 528 F. Supp. 2d 587, 598 (E.D. Va. 2007) ("While some courts have held that this rule applies to bar a suit between A and B where an express contract on the same subject matter exists between A and C, other courts have rejected such an application of this rule.") (footnotes omitted).

In *Butts v. Weltman, Weinberg & Reis Co.*, the court noted that the "'law will not impose an implied contractual relationship upon parties in contravention of an express contract.'" 2013 WL 6039040, at \*4 (E.D. Va. Nov. 14, 2014) (quoting *Nedrich v. Jones*, 245 Va. 465, 429 S.E.2d 201 (1993)). This rule "does not stand for the blanket rule that the existence of an express contract between different parties bars all subsequent implied contract claims touching upon the same subject matter," rather, the rule "applies only when the resulting implied contract would contravene an express contract." *Id.* Accordingly, the Court must determine whether the contract between the Government and Health Net contravenes the Government's unjust enrichment claims against the Defendants – that is: "is there an express contractual provision that covers the alleged wrongful conduct." *Id.* at \*5.

The Defendants argue the contract between the Government and Health Net governs the relationship of the parties. In relevant part, the contract indicates:

> (d) Audit. At any time or times before final payment, the Contracting Officer may have the Contractor's invoices or vouchers and statements of cost audited.

"Audits" as used in this clause, includes audits on statistically valid samples. The audit results will be extrapolated across all the TRICARE medical claims for the region submitted for TED edits during the audited period to determine the total overpayment or underpayment of the TRICARE medical claims population sampled for the region. The results of the audits will be used to adjust for overpayments and underpayments of health care costs. These adjustments are in addition to the Government's rights under the Inspection of Services Clause (FAR 52.246-5). Any payment may be –

(1) Reduced by amounts found by the Contracting Officer not to constitute allowable coasts; or

(2) Adjusted for prior overpayments or underpayments.

Def. Resp. Opp'n, ECF No. 31, Exhibit 3 at 00067. The Court finds this provision does not contravene the Government's action for unjust enrichment against Defendants and does not provide evidence that the contract governs the relationship of the parties. While the provision allows the Government to reduce or adjust payments to Health Net, it does not allow the Government to directly recover from the Defendants any overpayments it made as a result of the Defendants' alleged wrongdoing. Therefore, Defendants' Motion for Summary Judgment regarding the Government's claims for unjust enrichment is **DENIED**.

## IV. CONCLUSION

For the reasons set forth herein, Defendants' Motion for Summary Judgment, ECF No. 27, is **GRANTED IN PART AND DENIED IN PART**. Defendants' Motion for Summary Judgement is **GRANTED** as to the Government's FCA claims against allegedly false statements submitted by Defendants before March 1, 2007. As to the Government's FCA claims arising from allegedly false statements submitted between March 1, 2007 and June 30, 2008, summary judgment is **DENIED**. Defendants' Motion for Summary Judgment is **GRANTED** as to the Government's claim of common law fraud and Count III, Common Law Fraud, is **DISMISSED**.

Finally, Defendant's Motion for Summary Judgment is **DENIED** as to the Government's claim of unjust enrichment.

The Clerk is **DIRECTED** to forward a copy of this Order to all Counsel of Record.

**IT IS SO ORDERED.**



UNITED STATES DISTRICT JUDGE

Norfolk, VA
May 6, 2016